**BURLINGTON NORTHERN INC., a corporation, Plaintiff,**

v.

**The AMERICAN RAILWAY SUPERVISORS ASSOCIATION, an unincorporated association, et al., Defendants.**

**No. 71 C 2002.**

United States District Court,.
N. D. Illinois, E. D.

Aug. 21, 1972.

J. R. Walker, St. Paul, Minn., T. G. Schuster, Chicago, Ill., Ralph J. Moore, Jr., Shea & Gardner, Washington, D. C., for plaintiff.

Alex Elson, Aaron S. Wolff, Elson, Lassers & Wolff, Chicago, Ill.; James R. Thompson, U. S. Atty., James Murray, Asst. U. S. Atty., Chicago, Ill.; Edward J. Hickey, Jr., Mulholland, Hickey & Lyman, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on cross-motions for summary judgment made pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The following facts are uncontroverted: Plaintiff Burlington Northern Inc. ("Burlington Northern"), a Delaware corporation, is a "carrier" as defined by section 1·First of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 First. Plaintiff was formed on March 2, 1970, by the merger of the properties and franchises of the Great Northern Railway Company ("Great Northern"); the Chicago, Burlington & Quincy Railroad Company ("CB&Q"); the Northern Pacific Railway Company ("NP"); the Pacific Coast Railroad Company ("PCRR") and by the lease by the surviving company of all properties owned, used, or operated by the Spokane, Portland & Seattle Railway Company ("SP&S").[1] Prior to the merger, each of these component lines was a "carrier" within the meaning of the RLA. Upon the effective date of the merger, the component lines ceased to exist as corporate entities[2] and carriers, the railroad operations of the component lines were merged and integrated, and the employees of the component lines were intermingled and became employees of the Burlington Northern. ·

Prior to the merger, the craft or class of mechanical supervisors employed by the CB&Q was represented by defendant American Railway Supervisors Association ("ARSA"), an Illinois corporation. ARSA had been duly certified by defendant National Mediation Board ("NMB") as representative of such employees pursuant to a representation election held on August 19, 1945; subsequent to the election, CB&Q recognized ARSA as the collective bargaining representative for all of its mechanical

---

1. Great Northern, CB & Q, NP, PCRR, and SP & S will hereinafter be referred to as the "component lines".

2. Except for SP & S which retained its corporate identity.

supervisors. The most recent collective bargaining agreement entered into between ARSA and CB&Q is dated March 1, 1970, one day before the effective date of the merger. The mechanical supervisors which had been employed by component lines other than the CB&Q had either been represented by labor organizations other than ARSA or had been unrepresented.[3]

Prior to the merger, the craft or class of technicians employed by the Great Northern was represented by ARSA. ARSA had been duly certified by NMB as representative of such employees pursuant to a representation election held on December 7, 1960; subsequent to the election, the Great Northern recognized ARSA as the collective bargaining representative for all of its technicians and negotiated agreements with ARSA with respect to rates of pay, rules and working conditions of such employees. The technicians which had been employed by component lines other than the Great Northern had been unrepresented.[4]

Due to the requirements of section 5 of the Interstate Commerce Act, 49 U.S.C. § 5, the Burlington Northern merger required the approval of the Interstate Commerce Commission ("ICC"). Although the ICC originally denied the application for the merger,[5] it later reconsidered its decision and approved the application.[6] As a condition precedent for its approval of the merger, however, the ICC, following the mandate of section 5(2)(f) of the Interstate Commerce Act, 49 U.S.C. § 5(2)(f), imposed upon the new carrier protective conditions for the employees of the component lines to become effective when the merger became effective. Certain of these protective provisions imposed by the ICC were incorporated in an Employees' Merger Protection Agreement ("Agreement") entered into on January 18, 1968. The parties signatory to the Agreement were the component lines; the Burlington Northern, as the "New Company"; and the labor organizations, including ARSA, representing the non-operating employees of the component lines.

Section 8 of this Agreement provides:

"The New Company will take over and assume all contracts, schedules and agreements between the said carriers and the labor organizations signatory hereto concerning rates of pay, rules governing working conditions, fringe benefits and rights and privileges pertaining thereto in effect at the time of consummation of the merger and will be bound by the terms and provisions thereof, subject to changes in accordance with the provisions of the Railway Labor Act, as amended, in the same manner and to the same extent as if the New Company had been a party thereto."

3. At the time of the merger, CB & Q employed 110 mechanical supervisors, all of which were represented by ARSA. Great Northern employed 240 supervisors which were represented by the Association of Mechanical Supervisors of the Great Northern Railway Company, NP employed 170 which had not been represented by any labor organization since 1969, and SP & S employed 19 which were represented by the Association of Supervisors of Mechanics. Thus, immediately prior to the merger, approximately 20% of the supervisors ultimately employed by the Burlington Northern were represented by ARSA; conversely, approximately 80% of such supervisors were either represented by labor organizations other than ARSA or were unrepresented.

4. At the time of the merger, Great Northern employed 105 technicians, CB & Q employed 73, NP employed 71, and SP & S employed 17. Thus, the Great Northern technicians, represented by ARSA, constituted approximately 40% of the technicians employed by Burlington Northern immediately after the merger.

5. Great Northern Pac.—Merger—Great Northern, 328 I.C.C. 460 (1966).

6. Great Northern Pac.—Merger—Great Northern, 331 I.C.C. 228 (1967), aff'd, United States v. United States, 296 F. Supp. 853 (D.D.C.1968), aff'd, United States v. I.C.C., 396 U.S. 491, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).

Subsequent to the merger, Burlington Northern refused to recognize and treat ARSA as the designated representative of the mechanical supervisors formerly employed by CB&Q and the technicians formerly employed by the Great Northern. The reason proffered by Burlington Northern for such action is as follows:

"Following the merger, it became evident that ARSA lacked the allegiance of a majority of any craft or class of Burlington Northern employees. Burlington Northern therefore took the position that ARSA is not the representative of any of its employees for purposes of collective bargaining under the Railway Labor Act, and accordingly Burlington Northern is not obliged to bargain with ARSA before changing the pay and working conditions of any of its employees." Plaintiff's Memo in Opposition to Motion of NMB at 2.

ARSA readily admits that it does not represent a majority of all of the mechanical supervisors or technicians employed by the Burlington Northern; it does contend, however, that it is the duly designated and authorized representative for those employees that it represented prior to the merger. ARSA notes that no other union, employee or group of employees is presently challenging the right of ARSA to so represent those employees.

Section 9 of the Agreement provides:

"In the event any dispute or controversy arises between the said carriers or the New Company and any labor organization signatory to this Agreement with respect to the interpretation or application of any provision of this Agreement . . . which cannot be settled by said carriers or the New Company and the labor organization . . . involved . . ., such dispute may be referred by either party to an arbitration committee for consideration and determination. Upon notice in writing served by one party on the other of intent by that party to refer the dispute or controversy to an arbitration committee, each party shall, within ten days, select a member of the arbitration committee and the members thus chosen shall endeavor to select a neutral member who shall served as Chairman . . . . Should the members designated by the parties be unable to agree upon the appointment of the neutral member within ten days, either party may request the National Mediation Board to appoint the neutral member . . . . If any party fails to select its member of the arbitration committee within the prescribed time limit, the representative of such party signatory to this Agreement or his designated representative shall be deemed to be the selected member and the committee shall then function and its decision shall have the same force and effect as though all parties had selected their members. . . . The decision of the majority of the arbitration committee shall be final and binding . . . ."

After Burlington Northern refused to recognize and treat ARSA as the designated representative of those employees ARSA claimed to represent, and after reconciliation conferences between the parties came to naught, ARSA, pursuant to section 9 of the Agreement, on or about June 3, 1971, served a notice on Burlington Northern of its intent to refer the dispute to arbitration. The dispute to be arbitrated was stated as follows:

"Was Burlington Northern required by Section 8 of the merger protective agreement executed on January 18, 1968 . . . to take over and assume the collective bargaining agreement between Chicago, Burlington & Quincy Railroad Company and the American Railway Supervisors Association covering mechanical supervisors and the agreement between Great Northern Railway Company and the

said Association covering technicians in effect at the time of consummation of the merger of said railroads into Burlington Northern and be bound by the terms and provisions of said agreements, including the continuing right thereunder of the American Railway Supervisors Association to act as the representative of the employees covered by said agreements, and is this a continuing obligation of Burlington Northern until such terms and provisions are changed in accordance with the provisions of the Railway Labor Act, as amended?"

Through certain correspondence in June, 1971, Burlington Northern made known its refusal to proceed with arbitration under the Agreement. On July 1, 1971, after Burlington Northern refused to designate a member of the Arbitration Committee, ARSA, in accordance with the provisions of section 9 of the Agreement, requested the NMB to appoint a neutral referee. By letter dated August 5, 1971, the NMB advised ARSA and Burlington Northern that it had docketed the matter and designated it as Special Board of Adjustment No. 775.

Immediately thereafter Burlington Northern filed the instant suit seeking (1) to enjoin the demanded arbitration and (2) to have this Court issue a declaration confirming its unilateral activities. Named as defendants in the instant suit were George S. Ives, David H. Stowe, and Peter C. Benedict, in their capacity as members of the NMB; the NMB; and ARSA. In its answer to the complaint, the NMB has affirmatively stated its intention to appoint a neutral member of the Arbitration Committee.

The instant motions have presented this Court with several interesting legal issues; in this Court's opinion, however, the most important of these is whether this Court has jurisdiction to determine whether the Burlington Northern must recognize ARSA as the bargaining representative of the employees that ARSA claims to represent.

## I. PLAINTIFF'S ARGUMENT

Burlington Northern, asserting that this Court has such jurisdiction, argues as follows: The selection of "representatives" for purposes of collective bargaining under the RLA is governed by sections 2 Fourth and 2 Ninth of the RLA, 45 U.S.C. §§ 152 Fourth, 152 Ninth. The only representation or bargaining unit provided for by those provisions is a "craft or class" of employees; the RLA makes no provision for any other kind of representation or bargaining unit.[7]

The National Mediation Board, which has jurisdiction under section 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth, to make "craft or class" determinations pursuant to union or employee applications therefor[8] has ruled repeatedly that

7. It should be noted that in this respect the RLA differs from the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et seq. Section 9(a) of the LMRA, 29 U.S.C. § 159(a), provides that bargaining representatives covered by that Act must be

 selected . . . by the majority of the employees in a unit appropriate for such [bargaining] purposes . . . . .

8. Under section 2 Ninth of the RLA, a representation dispute exists only where an issue has been raised "among a carrier's employees as to who are the representatives of such employees." Thus, a representation dispute may be raised only by the employees of a carrier or by a union claiming to represent such employees, Brotherhood of Locomotive Firemen & Enginemen v. N.M.B., 133 U.S. App.D.C. 326, 410 F.2d 1025, cert. denied, 396 U.S. 878, 90 S.Ct. 149, 24 L.Ed.2d 136 (1969). The NMB has held consistently that a carrier is not even a party to section 2 Ninth disputes, Thirty-Seventh Annual Report of the National Mediation Board at 33 (1971), and its view in this respect is shared by the Supreme Court, Brotherhood of Railway and Steamship Clerks, etc. v. Ass'n for Benefit of Non-Contract Employees, 380 U.S. 650, 666–667, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965). It should be noted that the RLA differs from the LMRA in this respect also.

a "craft or class" [9] must be functional in character and carrier-wide in scope.[10]

The NMB applies the same rule even when the carrier is created through the merger or consolidation of formerly independent carriers, as in the instant case. Thus, in Representation of Employees of New York Central R. Co., NMB Case No. R–690, 1 NMB Craft or Class Determinations 197 (May 27, 1941), the NMB rejected the contention of the Switchmen's Union of North America ("SUNA") that the SUNA was entitled to represent yardmen on portions of a consolidated railroad on which it had represented yardmen prior to the consolidation, stating:

"As the Board views the subject under consideration, it feels bound to conclude that no issue has been raised in this case as to what is a craft or class under the [RLA]. There is no dispute that the class or craft of 'yardmen' embraces foremen or conductors, helpers or brakemen, switchtenders, and car-retarder operators. The issue actually raised is simply a question as to whether this craft or class of 'yardmen' may be broken into separate groups on the Railroad Company with a resulting right in any group to demand separate group representation . . . .

"The National Mediation Board . . . has reached the conclusion that, since the New York Central Railroad Co. and all of its operated subsidiaries . . . constitutes a single carrier for the purposes of the Railway Labor Act, all of the employees of any given craft or class, such as yardmen, in the service of a carrier so determined must therefore be taken together as constituting the proper basis for determining their representation in conformity with Section 2, Ninth, of the [RLA]." *Id.* at 209–10.

Indeed, plaintiff argues, the NMB has applied the same rule with respect to the Burlington Northern merger. Following the merger, the NMB dismissed the pending application for decertification of ARSA and certification of another organization as the representative of technicians employed by the Great Northern. The NMB stated:

"The Board finds that since the carrier known as the Great Northern Railway Company is no longer in existence, the application as presented is moot." Representation of Employees of Burlington Northern, NMB Case No. R–4043 (June 3, 1970).

Plaintiff asserts that the NMB's decision in the *Burlington Northern* case

"is a square holding that the old Great Northern technicians' bargaining unit no longer exists, for otherwise the competing union's petition for certification would not have been moot, and the Board would have had to determine whether that union or ARSA had the support of a majority of the members of the unit; for if the competing union had a majority, that union, not ARSA, would be entitled to represent the technicians ARSA now claims to represent." Plaintiff's Memo in Opposition to Motion of ARSA at 18.

The NMB's construction of the RLA has been endorsed by the courts. Thus, as stated in Brotherhood of Railroad Trainmen v. Atlantic Coast Line Railroad Co., 127 U.S.App.D.C. 298, 383 F.2d 225, 228 (1967), the RLA "authorizes the [NMB] to designate the bargaining agent for railroad employees and, as the Board itself has construed it, refers only

---

9. It has been observed that "[w]hile 'craft' and 'class' may not be synonymous as used in the Act, this could only be because 'class' may be more comprehensive." Switchmen's Union v. N.M.B., 77 U.S.App.D.C. 264, 135 F.2d 785, 793, rev'd on other grounds, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

10. *See, e. g.,* Representation of Employees of Denver & Rio Grande Western R. Co., NMB Case No. R–1826 (May 28, 1947); Representation of Employees of New York Central R. Co., NMB Case No. R–690 (May 27, 1941); Representation of Employees of Pennsylvania R. Co., NMB Case No. R–305 (May 7, 1937).

to certifications of single carrier units." *In accord*, Switchmen's Union v. N. M. B., 77 U.S.App.D.C. 264, 135 F.2d 785, 794, rev'd on other grounds, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943).

Thus, relying upon the authorities set forth hereinabove, Burlington Northern concludes that ARSA cannot be the bargaining representative for the technicians and mechanical supervisors it claims to represent since ARSA claims to represent neither all of the technicians nor all of the mechanical supervisors employed by the Burlington Northern.

Having concluded that it is under no legal duty to bargain with ARSA, Burlington Northern argues that this Court has jurisdiction to declare the same and to enjoin the arbitration that ARSA has demanded. Plaintiff notes that it is well settled that courts have jurisdiction to determine statutory issues arising under the RLA as long as no adequate administrative remedy can be afforded by the National Railroad Adjustment or Mediation Board. Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 774, 72 S.Ct. 1022, 1025, 96 L.Ed. 1283 (1952).[11] Under the RLA, carriers have a positive duty to bargain with the true representatives of their employees and a negative duty not to engage in "such bargaining with any who do not represent them." Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 548, 57 S.Ct. 592, 600, 81 L.Ed. 789 (1937). Courts, therefore, have jurisdiction to determine whether the conduct of a particular carrier satisfies the duty to bargain, so long as the question does not turn on an issue within the exclusive jurisdiction of an administrative tribunal. Chicago & N.W. R. Co. v. United Transportation Union, 402 U.S. 570, 578–579, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971); Virginian R. Co. v. System Federation No. 40, *supra* 300 U.S. at 550, 57 S.Ct. 592; Pan American World

Airways, Inc. v. International Brotherhood of Teamsters, 275 F.Supp. 986, 995–996 (S.D.N.Y.1967), aff'd, Brotherhood of Railway, Airline and Steamship Clerks etc. v. Pan American World Airways, Inc., 404 F.2d 938 (2nd Cir. 1969).

While Burlington Northern admits that the NMB has jurisdiction to determine which of two contending labor organizations has the support of a majority of the employees in a bargaining unit and is therefore entitled to recognition, it asserts that no such dispute is involved in the instant case. Rather, plaintiff argues, the dispute here is over the question of whether a carrier has a duty under the RLA to bargain with a union that admits it does not have the support of a majority of any craft or class of the carrier's employees'; this dispute, Burlington Northern asserts, involves a pure question of statutory construction.

Thus, Burlington Northern concludes, because the authorities clearly show that Burlington Northern has no legal duty to bargain with ARSA and because this Court has jurisdiction to entertain the instant suit, plaintiff is entitled to summary judgment.

## II. DEFENDANTS' ARGUMENT

ARSA's argument for summary judgment in its favor largely ignores Burlington Northern's assertion that ARSA is not the legal bargaining representative for the employees it claims to represent; instead, ARSA concentrates on the issue of whether this Court has jurisdiction to make such a determination.

In beginning its argument, ARSA notes:

"In seeking a judicial declaration that it need not treat with ARSA as representative of any of its employees, plaintiff attempts in effect to assert that there is some kind of a represen-

11. *In accord*, Felter v. Southern Pacific Co., 359 U.S. 326, 327 n. 3, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959); Steele v. Louisville & N. R. Co., 323 U.S. 192, 207, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 213–214, 65 S.Ct. 235, 89 L.Ed. 187 (1944).

tation dispute." ARSA's Memo in Support of Motion for Summary Judgment at 15.

However, ARSA asserts, as mentioned hereinbefore,[12] there can be no representation dispute under the RLA where the dispute has not been instituted by either an employee of a carrier or by a labor organization. Thus, ARSA notes, there is no legally recognizable representation dispute in the instant case since the complaint is void of any facts showing that any employee or any labor organization claims that ARSA does not now represent the employees it purports to represent.

Furthermore, ARSA argues, even if the instant suit presented a recognizable representation dispute, this Court is without jurisdiction to resolve it. For nearly 30 years the rule has been firmly established that the NMB has exclusive jurisdiction over representation disputes that fall within section 2 Ninth of the RLA, General Committee of Adjustment of Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 320 U.S. 323, 336–337, 64 S.Ct. 146, 88 L.Ed. 76 (1943). The only time that courts can exercise jurisdiction over representation disputes is when the NMB has acted in excess of its statutory authority under section 2 Ninth (and ARSA notes that no such claim is or could be made here), Brotherhood of Railway and Steamship Clerks etc. v. Ass'n for Benefit of Non-Contract Employees, 380 U.S. 650, 661, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

Thus, ARSA concludes, because the complaint is premised upon a representation dispute which does not legally exist and over which this Court would have no jurisdiction even if it did exist, ARSA is entitled to summary judgment.

### III. OPINION OF THE COURT

This Court is in agreement with ARSA that the instant complaint is premised upon a dispute which is, in reality, a representation dispute. The Court notes that in order to grant the relief sought by the Burlington Northern, this Court would have to make the following determinations:

(1) It would have to determine which of plaintiff's employees were within the crafts or classes of mechanical supervisors and technicians employed by the Burlington Northern·;

(2) It would have to find that ARSA did not represent a majority of the employees within the crafts or classes designated by this Court; and

(3) It would have to hold that the merger automatically resulted in a decertification of ARSA as the bargaining agent for the employees that ARSA previously represented.

 These three determinations are determinations that can only be made by the NMB; indeed, the Supreme Court has been quite specific in holding that federal courts are without jurisdiction to make determinations such as the first one set forth. In Brotherhood of Railway and Steamship Clerks, etc. v. Ass'n for Benefit of Non-Contract Employees, *supra*, the Court stated:

"In view of these considerations, we hold that the Board performed its statutory duty to conduct an investigation and designate the craft or class in which the election should be held and that it did so in a manner satisfying any possible constitutional requirements that might exist. Its determination, therefore, is not subject to judicial review." 380 U.S. at 668, 85 S.Ct. at 1201.

Consequently, because this Court is without jurisdiction to entertain representation disputes under the RLA, the complaint fails to state a claim upon which this Court can grant relief.

---

12. See footnote 8, *supra*.

Accordingly, it is hereby ordered, adjudged and decreed that:

(1) Burlington Northern's motion for summary judgment is denied; ·

(2) ARSA's motion for summary judgment is granted; and

(3) NMB's motion for summary judgment is granted.