**LOCAL 1477 UNITED TRANSPORTA-TION UNION and Lodge 666 United Transportation Union, Plaintiffs-Appellees,**

v.

**George P. BAKER et al., Defendants-Appellants.**

**No. 72-1478.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 27, 1972.

Decided June 21, 1973.

Patrick E. Hackett, Detroit, Mich., for defendants-appellants.

Ernest Goodman, Detroit, Mich., for plaintiffs-appellees; Goodman, Eden, Millender, Goodman & Bedrosian, Ernest Goodman, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and HASTIE *, Senior Circuit Judge.

HASTIE, Circuit Judge.

The trustees of Penn Central Transportation Co., a common carrier by railroad, have taken this appeal from an order of the District Court for the Eastern District of Michigan, Southern Division, that permanently enjoined the railroad from disciplining employees who elect to absent themselves from work frequently without justifying reason, so long as they shall work at least one day a month and there are sufficient employees available on a reserve or part-time list to fill all work assignments. The district court prefaced its injunction with a jurisdictional finding that the matter in controversy was justiciable as a "major dispute" within the intendment of the Railway Labor Act, 45 U.S.C. ch. 8. The correctness of that jurisdictional finding and the judicial action to which it led are disputed on this appeal.

The rights and obligations of the railroad and its employees who are involved in this case are controlled by a collective bargaining agreement between the railroad and the plaintiff unions and by mutually recognized "Railroad Rules for Conducting Transportation". Section 61 of Article 26 of the firemen's labor contract and Rule 26 of the trainmen's contract both specify that employees "may have 30 days layoff on receipt of permission from proper official without written leave of absence". General Rule T of the Rules for Conducting Transportation requires that "[e]mployees must report for duty at the required time" and that "[n]o employee will be allowed to absent himself from duty without proper authority . . .." There is also a general provision that the "service demands the faithful . . . discharge of duty".

Employees are classified as "regular" or "extra". For a regular employee the railroad guarantees employment on a scheduled shift for a five day work week. Employees on the "extra" list are guaranteed the opportunity to work four out of every seven working days. General Rule 8 provides that "[r]egular men will be permitted to lay off when extra men are available". Section 35 of the firemen's contract provides that "extra" employees who lay off when they are called shall be moved to the bottom of the list of available "extras".

The district court gave the parties a full hearing at which it appeared that over the years numbers of men, regular and extra, had absented themselves without justifying reason with such frequency that they put in only a small fraction of the normal work time guaranteed them. It also appeared that for years the railroad tolerated this, though from time to time it had complained to the union of improper and excessive "marking off" (notifying a supervisor that the employee does not choose to work). However, in recent years, the issue has become sharply drawn, with the employer insisting that the contract and rules contemplate and require work with some degree of regularity subject to absence with permission and for good cause, while the union contends that an employee has the right of lay off at will without penalty, so long as he shall work at least one day in thirty and an "extra" is available to take his place. This suit was filed when the railroad threatened to discipline particular employees who were said to have absented themselves very frequently without justification.

The answer to the jurisdictional question in this case depends upon the application of a recognized distinction that

* The Honorable William H. Hastie, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

governs the administration of the Railway Labor Act. Under that Act, the courts have classified disputes as either "major" or "minor". In the leading case of Elgin J. & E. Ry. v. Burley, 1945, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, the Supreme Court described major disputes as those "over the formation of collective agreements or efforts to secure them. They arise where there is no agreement or where it is sought to change the terms of one . . .." The Court then contrasted those minor disputes "in which no effort is made to bring about a formal change in terms or create a new . . . [agreement, but rather the] dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case". Recognizing that distinction, this court has said: "A 'major dispute', as that phrase is known in the parlance of the Railway Labor Act, results when there is a disagreement in the bargaining process for a new contract. A 'minor' dispute is a controversy over the meaning of an existing collective bargaining agreement in a particular fact situation." Brotherhood of Railway Trainmen v. New York Central R. R., 6th Cir. 1957, 246 P.2d 114, 118, cert. denied, 355 U.S. 877, 78 S.Ct. 140, 2 L.Ed. 2d 107.

◼ If a dispute is minor and the parties are unable to resolve it through negotiation or prescribed grievance procedures, the National Railroad Adjustment Board then has primary and exclusive jurisdiction under section 3 of the Railway Labor Act, 45 U.S.C. § 153, to interpret the agreement of the parties and make an appropriate award. Order of Rail Conductors v. Pitney, 1945, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318; Slocum v. Delaware L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L. Ed. 795; Brotherhood of R.R. Trainmen v. Chicago River and Indiana R. Co., 1957, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed. 2d 622; and to the same effect see very recent decisions of courts of appeals in Baker v. United Transportation Union, AFL–CIO, 3d Cir. 1971, 455 F.2d 149, 154; Brotherhood of Locomotive Firemen and Enginemen v. Southern Pacific Company, 5th Cir. 1971, 447 F.2d 1127, 1132; United Transportation Union v. Burlington Northern, Inc., 8th Cir. 1972, 458 F.2d 354, 356. Thus generally stated, these concepts are settled law with which no party to this appeal takes issue.

◼ However, difficulty arises when, as in this case, one party views the controversy as a dispute over the proper interpretation of the existing contract and agreed rules, while the other charges its adversary with an attempt to impose unilaterally a new requirement that changes the existing agreement. Confronted by such opposing characterization of particular disputes, the courts of appeals have consistently ruled that if the disputed action of one of the parties can "arguably" be justified by the existing agreement or, in somewhat different statement, if the contention that the labor contract sanctions the disputed action is not "obviously insubstantial", the controversy is within the exclusive province of the National Railroad Adjustment Board. Railway Express Agency v. Brotherhood of Railway, Airline and Steamship Clerks, 5th Cir. 1971, 459 F. 2d 226, 231, cert. denied 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 ("arguable"); Switchmen's Union ·v. Southern Pacific Co., 9th Cir. 1968, 398 F.2d 443, 447 ("arguably predicated on the terms of the agreement"); Airline Stewards Assn. v. Caribbean Atlantic Airlines, Inc., 1st Cir. 1969, 412 F.2d 289, 291 (not "obviously insubstantial"); Southern Ry. Co. v. Brotherhood of Locomotive Firemen and Enginemen, 1967, 127 U.S.App.D.C. 371, 384 F.2d 323, 327 (not "obviously insubstantial"). In our view, the concept expressed in these formulations is sound. We apply it to this case.

In their briefs and orally the opposing parties have argued at length the meaning, interrelation and proper interpretation of the provisions of their labor contracts and related rules, from which we

have quoted early in this opinion. The unions argue that the provision relating the privilege of lay off to the availability of extra men implies an absolute right of lay off so long as a qualified extra employee is available as a replacement. The railroad contends that the work time it agrees to provide is inferentially the normal work week and that the rules requiring "faithful discharge of duty" and prohibiting absence from duty "without proper authority" authorize it to discipline employees who "mark off" with great frequency without justifying excuse. The parties also argue the historic facts concerning the extensiveness of marking off over the years and the railroad's acquiescence or objection in particular cases.

Without elaboration of these arguments, we think it clear that this controversy presents a minor dispute. The formal documents, which both parties view as controlling, do not unambiguously answer the presently disputed question. The competing inferences which the parties draw from the documents and from past practice thereunder are "arguable" and cannot fairly be characterized as clearly unreasonable or "obviously insubstantial". This then is the very type of dispute that lies within the special competence of the National Railroad Adjustment Board and was intended by Congress to be decided, in first instance at least, by that special tribunal rather than by a court.[1]

It follows that in this case the district court has exceeded its jurisdiction by undertaking to interpret a labor contract and related rules, the impact of which upon the matter in dispute is unclear, and then permanently enjoining the railroad from taking any disciplinary action inconsistent with the court's interpretation of the controlling agreements.

The judgment is reversed.

---

1. This holding is fully consistent with our recent decision in United Transportation Union, Local 63E v. Penn Central Co., 6th Cir. 1971, 443 F.2d 131, 136, cert. denied 404 U.S. 938, 92 S.Ct. 271, 30 L.Ed.2d 251, where we ruled that an entirely different type of controversy over a unilateral change of working conditions was not "a mere dispute over contract interpretation". In that case we approved a *temporary* injunction to maintain the status quo pending resort to the Mediation Board.