**AIR LINE PILOTS ASSOCIATION INTERNATIONAL**

v.

**BRANIFF AIRWAYS, INC.**

Civ. A. No. CA3–75–1367–G.

United States District Court,
N. D. Texas,
Dallas Division.

March 29, 1976.

Mullinax, Wells, Mauzy & Baab, Inc., Dallas, Tex., Cohen, Weiss & Simon, New York City, for plaintiff.

Amos Moses, Philip R. Russ, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

PATRICK E. HIGGINBOTHAM, District Judge.

This suit under the Railway Labor Act, as amended, 45 U.S.C. 151, et seq., turns on the historic and oft-litigated issue of major vs., minor disputes.

The Air Line Pilots Association International (ALPA), purporting to act on behalf of the Association of Flight Attendants (AFA), seeks an injunction to halt enforcement of certain weight regulations for flight attendants set by Braniff Airways, Inc., (Braniff). ALPA contends that mandatory weight standards with sanctions for their enforcement were not part of the rules and working conditions for flight attendants before September 15, 1975; that Braniff, by imposing the standards, is changing the rates of pay, rules and working conditions without conforming to the procedures for such changes mandated by the Railway Labor Act, 45 U.S.C. § 156. Additionally, ALPA contends that Braniff failed to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions . . . ", 45 U.S.C. § 152, First. Braniff denies that it is changing the flight attendants' rates of pay, rules and working conditions. Braniff also urges that there is an absence of a real party in interest in that the flight attendants are members of the Association of Flight Attendants; not ALPA. Braniff, in other words, denies that it is obligated to bargain with ALPA regarding the working conditions of flight attendants despite the fact that ALPA is the certified representative under the Railway Labor Act.

1. Braniff's Attack upon the Right of ALPA to Represent the Flight Attendants.

Braniff's threshold jurisdictional argument may be quickly disposed of. The history of the Railway Labor Act teaches that the carrier and representative must follow pacifist calculated courses of action before either may resort to self-help. The courts may intervene only to redirect to the statutory path either the carrier or the representative, should they stray. Braniff's argument would require this court to judicially determine the scope of the bargaining unit and union membership, contrary to the procedures of the Act, 45 U.S.C. § 152, Ninth. See *Burlington Northern, Inc. v. American Ry. Sup. Ass'n*, 350 F.Supp. 897 (N.D.Ill.1972), aff'd 7 Cir., 503 F.2d 58, cert. denied 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466. Such judicial review would open to carriers a new range of collateral attack in plain frustration of the statutory mandate. Whatever may be the internecine difficulties of AFA and ALPA, it is undisputed that ALPA carries the statutory badge of designated representative for AFA. Moreover, Braniff has negotiated contracts with ALPA regarding the rates of pay and working conditions of AFA members. The more recent examples include the collective bargaining agreement effective October 1, 1973, and its amendment of January 15, 1976. While Braniff's chief negotiator attempted to avoid any concession in those negotiations that ALPA was speaking for the flight attendants, Braniff nonetheless contracted with ALPA. Thus, for the reason that judicial review at this juncture as to the scope of the bargaining unit and union membership is contrary to the Railway Labor Act and for the further reason that Braniff is estopped to question the right of ALPA to bargain for AFA regarding the working conditions of flight attendants, the proper parties are before the court.

## 2. Major vs. Minor Dispute.

The legal standard is simply stated. The Railway Labor Act charts two distinct procedural paths toward its single objective of controlled dispute resolution. One path forbids any unilateral acts; the other path allows either the representative or the carrier to act, pending final resolution of the dispute. One path is for major disputes and the other path, for minor disputes. The distinction is described by Justice Rutledge in *J. & E. R. Elgin Co. v. Burley*, 325 U.S. 711, 723–725, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, 1894 (1945):

" . . . In general the difference is between what are regarded traditionally as the major and the minor disputes of the railway labor world. The former present the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid. Because they more often involve those consequences and because they seek to create rather than to enforce contractual rights, they have been left for settlement entirely to the processes of noncompulsory adjustment.

The so-called minor disputes, on the other hand, involving grievances, affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or individual quality. They seldom produce strikes, though in exaggerated instances they may do so. Because of their comparatively minor character and the general improbability of their causing interruption of peaceful relations and of traffic, the 1934 Act sets them apart from the major disputes and provides for very different treatment.

Broadly, the statute as amended marks out two distinct routes for settlement of the two classes of dispute, respectively, each consisting of three stages. The Act treats the two types of dispute alike in requiring negotiation as the first step toward settlement and therefore in contemplating voluntary action for both at this stage, in the sense that agreement is sought and cannot be compelled. To induce agreement, however, the duty to negotiate is imposed for both grievances and major disputes . . . ."

*Elgin's* predecessors and its progeny gave rise to the suggestion that only a change in a working condition included in a collective bargaining agreement could foster major disputes.[1] That misapprehension of the Railway Labor Act was laid to rest by Justice Black in *Detroit & Toledo Shore Line v. United Transp. Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969), where management had changed a work assignment area not controlled by the collective bargaining agreement. The court held that the parties must maintain the status quo (pending exhaustion of the major dispute route) of the "actual, objective working conditions out of which the dispute arose, and clearly these conditions need not be covered in an existing agreement." *Id.* 153, 90 S.Ct. 301, 24 L.Ed.2d 334. Thus, under *Detroit & Toledo Shore Line*, a major dispute may be precipitated by a change in a working condition not the subject of a collective agreement. The court's reasoning rejects as the major-minor dispute litmus the inquiry of whether a change is or is not the subject of an extant agreement. Yet a number of the circuits, including the Fifth Circuit, adhere to the view that if " . . . the disputed action of one of the parties can 'arguably' be justified by the existing agreement or, in somewhat different statement, if the contention that the labor contract sanctions the disputed action is not 'obviously insubstantial', the controversy is within the exclusive province of the National Railroad Adjustment Board." *Local 1477, United Transp. Union v. Baker*, 482 F.2d 228, 230 (6th Cir. 1973). The *Baker*

---

1. See *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914 (1942); *Order of Conductors v. Pitney*, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946).

test or similar ones have been followed by the eight circuits facing the issue (the Fourth and Tenth have not faced the issue). See *United Transp. Union v. Penn Central Transp. Co.*, 505 F.2d 542 (3d Cir. 1974), and *R.E.A. Express, Inc. v. Bhd. of Ry. Clerks*, 459 F.2d 226 (5th Cir.), cert. denied, 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972). Reading together the *Baker* and *Detroit & Toledo Shore Line* tests it is evident that a two-step inquiry is required. First, does the dispute concern a change in working conditions? Second, what is the relationship between the changed condition and the collective bargaining agreement?

Because it is undisputed that Braniff has not complied with the procedural mandates for resolution of major disputes, the pivotal issues here are whether Braniff's weight program is a change in working conditions and, if so, is at least "arguably" justified by the existing agreement.

ALPA concedes that before 1972 the company maintained a policy of weight control of flight attendants in much the same manner it now "proposes." ALPA members resorted to the grievance procedure to resolve disputes concerning that practice. Braniff points to these uses of the minor dispute path as evidence that ALPA did not regard, at least before, the weight program as a new or different program.

Ironically, it is an arbitral award that underpins ALPA's present argument. A memorandum dated February 28, 1972, addressed to all "Hostesses" (now "flight attendants") from the "Director, Hostess Programs & Procedures," entitled "B I MEMO," "HOSTESS MEMO 72–08," (Plaintiff's Exhibit 3) stated in pertinent part:

"  .   .   .   4. Effective March 1, maximum weight becomes maximum weight, and, therefore, if at your weigh-in you are overweight, a fact finding hearing will be set up and at the time of the fact finding hearing you are still overweight, you will be removed from service until such time

as you reduce to your maximum weight   .   .   ."

(Signed) "Dean D. Dahlin"

The maximum weight proposed in Paragraph 4 never became effective because upon contest by ALPA, the weight restriction went to arbitration. The award blocked Paragraph 4. ALPA, in its request that the grievance hearing be convened, described the issue as:

"Whether the company's Hostess Bulletin No. 72–08 dated February 28, 1972, regarding administration of weight and appearance guidelines imposes working condition violative of the Agreement or practices appertaining thereto."

Braniff urges that its contractual right to prescribe weight regulations is found in the Agreement of October 1, 1973, between Braniff and ALPA. That Agreement (Plaintiff's Exhibit 10) provides in its definition section:

"(A) 'Flight Attendant' means an employee of the Company regularly assigned to flight duty who is responsible for the performing or assisting in the performance of all en route cabin services or ground service to delayed or cancelled passengers *in accordance with Company regulations and standards*   .   .   ." (emphasis supplied.)

ALPA urges that whatever be the rights of Braniff to set forth good grooming standards, the right to discipline was lost by the award in 1972; that any resumption of disciplinary activities in 1976 was a unilateral change in working conditions.

It is not necessary to catalogue the disputes between Braniff and ALPA after 1972 regarding efforts to monitor the weight of its flight attendants. It is clear that Braniff's claimed rights to impose sanctions at the least arguably arises from its agreement with ALPA.

Braniff's attitude toward enforcement of its weight policy after the bulletin of February 28, 1972, fell in arbitration is not clear. Certainly there was no longer a resolute pursuit of its goal of trim flight attendants. No disciplinary action

was taken against any flight attendant solely for its breach. It follows that the September, 1975, announcement by Braniff that its weight policy would thereafter be enforced may well have constituted a change in working conditions. But the dispute is a minor one because the change at the least arguably involved a construction of the collective bargaining agreement. The scope of management's reservation of prerogatives by the definition of "employee" and the impact of the arbitral award of 1972 upon that agreement are matters of contract interpretation.

█ While the treatment by the union of analogous disputes as minor is not determinative, it provides a significant clue. Resort to arbitration is compelling evidence that the collective bargaining agreement is at least sufficiently ambiguous in its coverage of the issue as to remove the dispute from the major category.

The application for a temporary injunction is denied.