**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 158, Plaintiff-Appellant,**

v.

**TOLEDO LAKEFRONT DOCK & PELLET COMPANY; Toledo Lakefront Dock Co., Station A; Toledo Docks and Chessie System Railroads, Defendants-Appellees.**

No. 84–3919.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1985.

Decided Nov. 18, 1985.

C. Thomas McCarter, Newcomer & McCarter, Toledo, N. Stevens Newcomer (argued), Toledo, Ohio, for plaintiff-appellant.

John B. Lewis (argued), Arter & Hadden, Cleveland, Ohio, for defendants-appellees.

Before MARTIN and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The International Longshoremen's Association, Local Union 158, filed an action against Toledo Lakefront Dock & Pellet Company and others claiming violations of the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.*, the Landrum-Griffith Act, 29 U.S.C. § 185, and the Interstate Commerce Act, 49 U.S.C. §§ 101, *et seq.* The union argues that two letters which it sent Toledo Lakefront satisfy the Railway Labor Act's section 6 requirement of notice to request a bargaining conference. The company has refused to bargain, claiming that the notices were insufficient under section 6 and that the topic of suggested negotiation was barred by a moratorium provision in a 1979 collective bargaining agreement between the parties. Plaintiff appeals the district court's denial of its motion for injunctive relief and the grant of defendant's motion for judgment on the pleadings.

In 1979, the parties signed what has become known as the Miami Agreement. Under the agreement, Toledo Lakefront could implement certain technological and operational changes in exchange for job protection benefits for the union's members. Section 10(c) of the Miami Agreement states that, if necessitated by some of these changes, "the Company will have the prerogative of realigning the manning tables prescribed in the Collective Bargaining Agreement." Section 11 contains a commitment by the union to cooperate in implementing the technological and operational changes. A key provision of the agreement states that "no party to this Article shall serve any notice or proposal for the purpose of changing the subject matter of the provisions of the Appendix I [the Job Protection Agreement] prior to June 14, 1987...." Finally, the agreement provides that "with respect to the interpretation or application" of the agreement, former Secretary of Labor William J. Usery would resolve any disputes as "Master of this Agreement."

As the technological and operational changes occurred, changes in manning were needed. In 1982, the parties signed what has become known as the Washington Agreement. The agreement memorializes the number of workers needed to run the dock, the positions to be filled by union members, and the wages to be paid. Its introduction states the agreement was "in recognition of the Organization's (I.L.A. # 158) obligation to modify the existing working Agreement to implement technological and operational changes as contemplated in Section 10, Paragraph (a) of the Job Protection provision" of the Miami Agreement. The Washington Agreement also stated: "This Agreement shall modify all existing agreements to the extent provided. Any change or modification shall be in accordance with the provisions of the Railway Labor Act, as amended."

On April 28, 1983, the union sent Toledo Lakefront a letter stating in pertinent part that "pursuant to Title 45, U.S.C.A., Section 156, you are hereby notified that a conference is desired and we offer to meet for the purpose of negotiating certain modifications in the Washington Agreement (manning)...." The company refused to negotiate, claiming that any negotiations on manning were barred by the Miami Agreement's moratorium provision. An October 1, 1983, letter from the union to Toledo Lakefront stated that "pursuant to Title 45 U.S.C.A., Section 165, [sic] you are hereby notified that a conference is desired and we offer to meet for the purpose of negotiating certain modifications in the agreement...." The company continued to refuse to negotiate, now claiming the October 1 letter did not satisfy the Railway Labor Act's section 6 notice requirement. On October 6, the company in a letter to the union specifically stated that the October 1 letter did not satisfy the section 6 requirement because it did not "specify the intended change in the agreement." Section 6 requires parties to give "at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions...." 45 U.S.C. § 156.

The union filed suit seeking a declaration that the October 1 letter was sufficient notice and an injunction ordering the company to negotiate. The district court held that the dispute involving manning requirements related to the interpretation of the Miami and Washington Agreements and was therefore a "minor" dispute over which the court had no jurisdiction. In a supplemental judgment, the court found the October 1 letter was insufficient notice because it did not specifically state the issues sought to be negotiated.

The jurisdictional question turns on the distinction between "major" and "minor" disputes under the Railway Labor Act. If a dispute is minor and the parties cannot resolve it under prescribed grievance procedures or through negotiations, the National Railroad Adjustment Board has "primary and exclusive jurisdiction under section 3 of the Railway Labor Act, 45 U.S.C. § 153, to interpret the agreement of the parties and make an appropriate award." *Local 1477 United Transportation Union v. Baker,* 482 F.2d 228, 230 (6th Cir.1973). The Supreme Court has defined a "major dispute" to "arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." By contrast, a "minor dispute" relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." *Elgin, Joliet & Eastern Railway v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). This Court's test for whether a dispute is minor, involving only the interpretation of an agreement, or major, involving a unilateral change in working conditions, "inquires whether the disputed action can 'arguably be justified by the existing agreement' or, in other words, whether the construction of the agreement which would sanction the action is 'not obviously insubstantial.'" *Brotherhood Railway Carmen v. Norfolk & Western Railway,* 745 F.2d 370, 375 (6th Cir.1984) (quoting *Baker,* 482 F.2d at 230).

We agree that Toledo Lakefront's claim that negotiations concerning manning are barred by the moratorium provision of the Miami Agreement is arguably correct and the dispute, therefore, is a minor one. Section 10 of the Miami Agreement specifically addresses the possibility that changes in the manning may be necessary due to the technological and operational changes. The Washington Agreement did not abrogate the Miami Agreement; rather as stated in the introduction, it was merely "to modify the existing working Agreement." As for the sentence in the Washington Agreement that modifications of it would be in accordance with the Railway Labor Act, the union's argument that this provision overrides the moratorium agreement without specific mention of the moratorium seems unlikely. In any case, Toledo Lakefront's interpretation of the provision to mean that unless there were further technological or operational changes the manning could be altered only by a section 6 notice after 1987 is "not obviously insubstantial." Because the dispute is a minor one, we affirm the district court's judgment on the pleadings for lack of jurisdiction.

In determining whether the October 1 letter satisfied the section 6 notice requirement, the union argues that a clear pattern of practice had been established between the parties such that for all practical purposes the company had been advised of the topics the union wanted to negotiate. We agree with the district court's supplemental judgment that the letter did not constitute sufficient section 6 notice. The clear language of section 6 requires that written notice of an "intended change" be given. We also find persuasive the Seventh Circuit's reasoning that a notice letter does not satisfy section 6 unless it "informs a party of the purpose sought to be attained by the other party with sufficient definition to enable the former to understand the implications of the notice and proposed means adopted to the goal's attainment." *Pullman Co. v. Order of Railway Conductors and Brakemen*, 316 F.2d 556, 562 (7th Cir.), *cert. denied*, 375 U.S. 820, 84 S.Ct. 57, 11 L.Ed.2d 54 (1963). Past practice is insufficient to circumvent this explicit requirement, particularly in light of Toledo Lakefront's quick denial of October 6 of the adequacy of the notice.

The judgment of the district court is affirmed.