**BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYES, Plaintiff-Appellant,**

v.

**UNITED AIR LINES, INC., Defendant-Appellee.**

**No. 15176.**

United States Court of Appeals Sixth Circuit.

Dec. 17, 1963.

---

James L. Highsaw, Jr., Washington, D. C., Leonard D. Slutz, Roy G. Holmes, Cincinnati, Ohio, on brief; Nichols, Wood, Marx & Ginter, Cincinnati, Ohio, Mulholland, Robie & Hickey, Toledo, Ohio, and Washington, D. C., of counsel, for plaintiff-appellant.

Stuart Bernstein, Chicago, Ill., Jack G. Evans, Cincinnati, Ohio, H. Templeton Brown, Edward R. Lev, Chicago, Ill., on brief; Dinsmore, Shohl, Barrett, Coates & Dupree, Cincinnati, Ohio, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel, for defendant-appellee.

Before MILLER, O'SULLIVAN and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This case arises out of the merger of Capital Airlines, Inc. into United Airlines, appellee herein, on June 1, 1961. The facts concerning the background and details of this merger are set forth in Northwest Airlines, Inc. v. C.A.B., 112 U.S.App.D.C. 384, 303 F.2d 395, affirming the approval of the merger by the Civil Aeronautics Board.

In May 1947 appellant was certified by the National Mediation Board pursuant

to the Railway Labor Act,[1] 45 U.S.C. § 151 et seq, as the designated bargaining agent for the employees of Capital in the craft or class of clerical, office, stores, fleet and passenger service. Pursuant to this certification, appellant and Capital entered into a collective bargaining agreement effective August 1, 1948, which, with certain revisions, was in effect immediately prior to the time Capital was merged into appellee.

Article 1(b) of this collective bargaining agreement contained the following provision:

"All provisions of this agreement shall be binding upon the successors or assigns of the Company (i. e. Capital) and in case of a consolidation or merger, the Company (i. e. Capital) will notify the Brotherhood at least 90 days prior to such consolidation, or merger, and representatives of the Company (i. e. Capital) and the Brotherhood will meet and negotiate for the procedure to be followed and the protection to be afforded the employees involved."

The merger agreement between appellee and Capital provided as follows:

"United * * * shall be subject to all of the restrictions, disabilities and duties of each of the Constituent Corporations; * * * and all debts, liabilities and duties of each of the Constituent Corporations shall thenceforth attach to United, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

Appellee announced from the outset of the merger proceedings that it would not assume or be bound by any of Capital's labor agreements. It is not contended that by the above-quoted language of the merger agreement appellee intended to assume the obligations of Capital under any of its collective bargaining agreements, or that appellee at any time made any representations to the effect that it as successor would be bound by the agreement between appellant and Capital.

Appellant participated as an intervenor in the proceedings before the Civil Aeronautics Board, urging that, if that Board should approve the proposed merger, this collective bargaining agreement be imposed upon appellee as a condition thereof. The Board refused to impose this condition in its order approving the merger, stating that this was a matter to be worked out "in accordance with regular procedures applicable to the matter of representation and agreement." Appellant appealed from the Board's decision to the Court of Appeals for the District of Columbia, but thereafter withdrew its appeal with the acquiescence of the other parties..

This suit was filed by appellant seeking a declaration that appellee was bound by the terms of appellant's collective bargaining agreement with Capital and to enjoin appellee from refusing to apply that agreement to those former employees of Capital covered thereby who became employees of appellee upon consummation of the merger. Appellee moved to dismiss the complaint or for summary judgment upon the following grounds: The cause involved a dispute as to who were the representatives under the Railway Labor Act of certain of its employees and hence exclusive jurisdiction lay with the National Mediation Board; if the requested relief were granted appellee would be required to treat with a bargaining representative for a minority of a craft or class, contrary to the provisions of the Railway Labor Act; that the agreement between appellant and Capital revealed on its face that it could not be legally or practically applied to less than an entire craft or

---

1. The Railway Labor Act, first adopted in 1926, was extended to air carriers in 1936 by the additions of Title II, 45 U.S.C. § 181 et seq., which applies all the provisions of the Act (with certain exceptions not involved here) to "every common carrier by air * * * and * * * person who performs any work as an employee * * * of such carrier." 45 U.S.C. § 181.

class; that another labor organization had representation rights for part of the group upon which appellant was seeking to impose its agreement with Capital and hence this other labor organization was an indispensable party to the action.

Appellant filed a cross-motion for summary judgment upon the ground that the material facts alleged in the complaint were not in dispute and that appellant on such undisputed facts is entitled to judgment as a matter of law.

■ The District Court denied both motions for summary judgment for lack of jurisdiction and granted appellee's motion to dismiss the complaint, holding that the case relates to a dispute as to who are representatives under the Railway Labor Act of certain employees of appellee and that exclusive jurisdiction to determine such a dispute vests with the National Mediation Board under the provisions of Section 2, Ninth, of the Railway Labor Act, 45 U.S.C. § 152, Ninth.

We affirm the District Court.

■ Three decisions of the Supreme Court make it clear that the federal courts have no jurisdiction over the solution of representation disputes. Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; General Committee, etc. v. Missouri-Kansas-Texas Railroad Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76; General Committee, etc. v. Southern Pacific Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85.

The facts of this case demonstrate the soundness of these three decisions and the impracticality of judicial interference in representation disputes over which Congress has conferred jurisdiction upon the National Mediation Board. 45 U.S.C. § 152. Prior to the merger of Capital into appellee, Capital was substantially the smaller of the two airlines. Immediatey prior to the merger it had

about 6500 non-management employees, about 6000 of whom were represented by labor organizations under six agreements. Appellee had 21,000 non-management employees, about 13,500 of whom were represented by nine labor organizations under twelve agreements. At the time of the merger there were approximatly 2700 employees of Capital in the clerical craft or class represented by appellant and covered by the collective bargaining agreement here sought to be enforced against appellee. The number of employees of appellee in this general craft or class numbered approximately 10,000, a part of whom had been organized pursuant to a National Mediation Board election and divided into two separate classifications. Immediately prior to the merger, approximately 2200 of the 10,000 employees of appellee in these classifications were represented by the International Association of Machinists under what is designated in the record as the I.A.M. Ramp and Stores Agreement. The remaining 7800 employees of appellee in this general class were not represented by a labor organization but were under uniform personnel regulations covering wage rates and fringe benefits.

After the merger the former Capital employees performing work covered under the I.A.M. Ramp and Stores Agreement came under that agreement, and about 530 of the 2700 Capital employees formerly represented by appellant are now represented by the International Association of Machinists. The remaining 2170 former Capital employees are now working alongside the 7800 unorganized employees of appellee in the same job classifications, and all are subject to the same pay schedules, benefits and working conditions established by appellee's personnel regulations.[2]

The record further disclosed that appellant seeks to represent the entire craft or class of employees of appellee in the

---

2. Appellee contends that, as a result of coming under its personnel regulations, these former Capital employees have realized an improvement in their pay and

related benefits. We agree with appellant that this is not a matter of legal significance in this case.

clerical, office, stores, fleet and passenger service, numbering some 12,170 employees, and has filed an application with the National Mediation Board asking for such certification under Section 2, Ninth, 45 U.S.C. § 152, Ninth, and there is now pending before the Court of Appeals of the District of Columbia Circuit a case involving an aspect of that proceeding, styled United Air Lines v. National Mediation Board et al., Case No. 17,777.

If the District Court had exercised jurisdiction in this case and had granted the relief sought in the complaint, such a determination clearly could have applied to no more than the 2700 former Capital employees, constituting a minority of this class or craft of appellee's employees, 530 of whom are now represented by the International Association of Machinists. Such an impracticable result demonstrates the soundness of the holding of the Supreme Court in the three above-cited cases that there is to be no judicial intervention in such representation disputes.

By skillful pleading in this case, appellant has tried to avoid the consequences of these three Supreme Court decisions above cited, which clearly otherwise would be controlling. Appellant contends that the complaint does not ask for an adjudication of a dispute concerning representation rights, but involves a dispute between the representative of employees and a carrier concerning the latter's contract obligations. It is significant, however, that the first paragraph of the complaint, after stating that this is an action for declaratory judgment, proceeds to make the following averment:

"It is brought because there now exists, as will hereinafter be more fully described, an actual controversy between the parties with respect to maintenance of a collective bargaining agreement executed pursuant to the provisions of the Railway Labor Act (45 U.S.C.A. Section 151 et seq.)."

Looking through form to substance, we agree with the District Court that, although the suit is cast in the form of an action under the law of contracts, it in fact involves a representation dispute. Even though an action is brought as one sounding in contract the courts have no jurisdiction "where 'validity' of the contract depends upon the merits of a representation dispute." Division No. 14, Order of Railroad Telegraphers v. Leighty, 298 F.2d 17, 20 (C.A.4).

Appellant relies strongly upon the fact that, prior to instituting this action, it filed with the National Mediation Board an application pursuant to Section 5, Second, of the Railway Labor Act, 45 U.S.C. § 155, Second, for an interpretation of the application or meaning of the collective bargaining agreement here sought to be enforced, but the Board found that it did not have jurisdiction to spell out the rights and obligations of the parties after the merger of Capital into appellee. It is argued that the dismissal of the complaint by the District Court leaves appellant without any forum in which to adjudicate appellee's obligations under appellant's agreement with Capital.

As hereinabove pointed out, appellant thereafter filed an application with the National Mediation Board asking for certification to represent the entire craft or class of appellee's employees in the clerical, office, stores, fleet and passenger service, and that proceeding is pending at the present time.

Regardless of what action may have been taken or may hereafter be taken by the National Mediation Board in this dispute, it is our opinion that the District Court was correct in holding that it did not have jurisdiction. As said by the Supreme Court in General Committee, etc. v. M.-K.-T., 320 U.S. 323, 336–37, 64 S.Ct. 146, 152, 153, 88 L.Ed. 76:

"It seems to us plain that when Congress came to the question of these jurisdictional disputes, it chose not to leave their solution to the courts. * * * However wide may

be the range of jurisdictional disputes embraced within § 2, Ninth, Congress did not select the courts to resolve them. * * * If the present dispute falls within § 2, Ninth, the administrative remedy is exclusive. If a narrower view of § 2, Ninth is taken, it is difficult to believe that Congress saved some jurisdictional disputes for the Mediation Board and sent the parties into the federal courts to resolve the others. * * *

"In view of the pattern of this legislation and its history the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforceable in the courts should be implied. Unless that test is met the assumption must be that Congress fashioned a remedy available only in other tribunals. There may be as a result many areas in this field where neither the administrative nor the judicial function can be utilized. But that is only to be expected where Congress still places such great reliance on the voluntary process of conciliation, mediation and arbitration. * * * Courts should not rush in where Congress has not chosen to tread."

In Division No. 14, Order of Railroad Telegraphers v. Leighty, 298 F.2d 17, 19 (C.A.4), involving a merger of railroads, the Court dismissed for lack of jurisdiction, saying:

"This trilogy of cases [referring to the three Supreme Court decisions above cited] authoritatively determines that judicial intervention in railway labor disputes is restricted to the narrowest scope; that large segments of this field remain subject to the voluntary processes of conciliation, mediation and arbitration; that particularly in representation disputes the adjudicatory function has been committed by Congress to the National Mediation Board. * * * "

All the cases relied upon by appellant have been considered carefully, including: Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Virginian Railway Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Brotherhood of Railroad Trainmen v. Smith, 251 F.2d 282 (C.A.6), affirming Smith v. Baltimore & Ohio R. R. Co., 144 F.Supp. 869 (S.D. Ohio); Commercial Telegraphers' Union v. Western Union Telegraph Co., 53 F.Supp. 90 (D.D.C.); and Livingston v. John Wiley & Sons, Inc., 313 F.2d 52 (C.A.2), cert. granted 373 U.S. 908, 83 S.Ct. 1300, 10 L.Ed.2d 411. We find all these cases to be distinguishable from this case, since we hold that the instant case involves a representation dispute and not merely an action sounding in contract.

The action of the District Court in dismissing the complaint for lack of jurisdiction is affirmed.