SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, a corporation,
Plaintiff-Appellee,

v.

UNITED TRANSPORTATION UNION, a
labor organization, (UTU), A. H. Chesser, President, et al., Defendants-Appellants.

No. 72–2013.

United States Court of Appeals,
Ninth Circuit.

Feb. 1, 1974.

Certiorari Denied May 13, 1974.
See 94 S.Ct. 2389.

Clifton Hildebrand (Argued), Hildebrand, McLeod & Nelson, Oakland, Cal., for defendants-appellants.

Robert S. Bogason (Argued), William R. Denton, John J. Corrigan, San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and WRIGHT, Circuit Judges, and EAST,\* Senior District Judge.

## OPINION

EAST, Senior District Judge:

### THE CASE

The defendants-appellants (Union) are, for our purposes, the representatives of the Switchmen employees of the plaintiff-appellee (Southern Pacific) and appeal from the District Court's order dated April 3, 1972, granting a restraint of a strike called and being conducted by the Union against Southern Pacific.

A brief narration of background history is warranted. In November of 1961, certain herder [1] agreements were entered into between Southern Pacific and the Switchmen, giving switchmen exclusive right to line switches in the performance of herding work and prohibiting the performance of this work by road crews. These agreements remained in effect until purportedly superseded by a National Agreement reached on August 2, 1971. The terms of the National Agreement were bargained for and negotiated over a period of nearly two years following a distressing national 18-day strike against the railroads, and the National Agreement was contentiously bargained for and provided that the national railroads would give the Union a 42 per cent wage hike in return for relaxation of a number of old contract work rules that had plagued the railroad industry by restricting work assignments to certain crafts within the Union. Because of a delay by proceedings for approval of the wage increases before the Pay Board, the 1971 agreement did not become effective until January 27, 1972. Immediately thereafter, the increases were paid to Union members and the nation's railroads sought to implement the new work rules and enjoy the consequent productivity increases. Specifically, Southern Pacific abolished sixteen herder positions pursuant to Article IX [2] of the National Agreement because they became unnecessary when Southern Pacific assigned its road crews (also represented by the Union) the work of attaching and detaching their engines to or from their road trains and line the switches necessary to move the engines between the engine service areas and the tracks where the trains rested, which work was

---

\* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

[1]. "Herders are taken from the ranks of switchmen and in fact, are switchmen, who perform yard service, usually by working alone, detaching engines from arriving road trains; lining necessary switches for movement of road engines to and from trains and roundhouse facilities; to allow trains and light engines to move into and out of tracks at ends of yards and line switches in roundhouse areas for movement of engines within such areas." Bush Affidavit dated March 10, 1972.

[2]. The pertinent parts are:
"*ARTICLE IX—ROAD–YARD MOVEMENTS*
*Section 1.* Road freight crews may be required at any point where yard crews are employed to do any of the following as part of the road trip, paid for as such without any additional compensation and without penalty payments to yard crews, holsters, etc.: . . . handle engines to and from train to ready track and engine house including all units coupled and connected in multiple; . . . ."

theretofore performed by switchmen occupying the sixteen herder positions that were abolished.

The Union in turn called the subsequently enjoined strike even though none of the switchmen employed in the sixteen positions were laid off but all were absorbed into other work activities.

The District Court found that the dispute out of which the strike arose involved the interpretation and application of existing collective bargained agreements and, therefore, was a "minor dispute" as that term is used and applied to matters under the jurisdiction of the Railway Labor Act, 45 U.S.C. § 151 et seq. The injunction was to permit utilization of the compulsory arbitration procedures of Section 3 of the Act, 45 U.S.C. § 153, which provides for submission of such disputes to the National Railroad Adjustment Board (Adjustment Board). The dispute itself was submitted to the Adjustment Board on March 19, 1972, and is now pending before that forum.

## ASSIGNMENT OF ERROR

The Union asserts that the District Court erred in that the undisputed record evidence required the District Court to deny all equitable relief to Southern Pacific because:

"(1) [Southern Pacific] should be by the conduct of its president estopped to claim such relief because of its misrepresentations and bad faith in connection with the inception of the agreement on which the railroad relies.

"(2) Because of fraudulent and mistaken representations so made at the inception of the agreement."

## PARTIES' CONTENTIONS

We summarize Union's contentions as follows:

(a) That Article IX does not incorporate a separate oral agreement with Southern Pacific concerning its herders and reached and made during the course of the national bargaining negotiations. Hence, Article IX is not a binding agreement between these parties under the rationale of Anaconda Wire and Cable Company v. National Labor Relations Board, 444 F.2d 1028 (7th Cir. 1971).

(b) Mr. Biaggini as president of Southern Pacific made certain false representations as to the number of herder positions which would be abolished under the proposed Article IX. That the Union relied in good faith upon those false representations and ceased further collective bargaining on the Article. Hence, Southern Pacific should be estopped to implement the Article adverse to those representations under the rationale of Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770, citing Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L.Ed. 617.

Accordingly, Union urges that the 1961 herder agreements with Southern Pacific are legally still effective and the dispute looks to a new agreement concerning switchmen-herder duty assignments and falls within the "major dispute" category as delineated in Switchmen's Union of North America v. Southern Pacific Co., 398 F.2d 443 (9th Cir. 1968) at page 445, citing Elgin, J. & E. Railway Co. v. Burley et al., 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886. Therefore, the restraint is violative of the Norris-LaGuardia Act, 29 U.S.C. § 108.

Southern Pacific denies the actionable false statement factual premise urged by Union and further contends that:

(a) the National Agreement superseded the 1961 herder agreements, hence, Article IX is a valid subsisting agreement between the disputing parties, and

(b) the dispute arises from its reasonably susceptible implementation of Article IX and is a "minor dispute" within the jurisdiction of the Adjustment Board.

Accordingly, the restraint was proper under the rationale and holdings of In-

ternational Brotherhood of Electrical Workers v. Washington Terminal Co., 154 U.S.App.D.C. 119, 473 F.2d 1156 (1972), cited and followed in Southern Pacific Transportation Co. v. International Brotherhood of Electrical Workers et al., 474 F.2d 696 (9th Cir. 1973). We agree and affirm.

## DISCUSSION AND CONCLUSIONS

### Union's Contention (a)

■ We decline to burden this opinion with the details of the high level national character of the collective bargaining terminating in the National Agreement. Suffice, we have considered and conclude that Union's contention (a) above is without merit in fact and at law.

### Union's Contention (b)

Manifestly the survival of this contention rests wholly and solely upon the factual picture presented by the evidentiary record. Our search of the record discloses that on January 31, 1972, after the agreement was signed, John Burge, General Chairman of Union on Southern Pacific's lines, contended for the first time to L. D. Bush, Assistant Manager of Labor Relations for Southern Pacific, that Union believed Article IX was not national in scope and did not apply to Southern Pacific as it did to other railroads, and that the 1961 agreement was still in effect, relying on two short in duration bargaining telephone conversations had on or about August 16, 1971, first, between Mr. Biaggini and Mr. Luna, as President of Union, and secondly, between Mr. Biaggini and Mr. Burge. The substance of those two telephone conversations is reflected only through the affidavit form averments of the parties to the telephone conversations. The averments are in conflict as to the exact statements made by Mr. Biaggini.

■ On their face, the claimed conversations, viewed in a light most favorable to the union, do not support its claims. They relate only to the manner in which Southern Pacific proposed to implement the terms of Article IX, once it became effective. There was no misunderstanding as to what Article IX says. Thus the conversations relate only to the meaning of the language of Article IX as it applies to Southern Pacific and its union employees. The union does not seek recission or reformation of Article IX. It claims that, as between Southern Pacific and the union, Article IX does not exist. This is nonsense.

The District Court found and concluded "that the disputes and grievances which are the basis of [Union's] strike and work stoppage do not concern changes in agreements, *but instead concern the interpretation and application of existing agreements* (italics supplied) covering rates of pay, rules and working conditions and are minor disputes for which [Union has] an appropriate administrative procedure for handling with [Southern Pacific]."

Finally, we conclude that:

(1) The District Court's finding is not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure.

(2) The National Agreement superseded the 1961 herder agreements and that Article IX thereof is a valid subsisting agreement between the parties hereto.

■ (3) "[Article IX is] reasonable susceptible to the interpretation sought [implementation thereof] by [Southern Pacific]" and the District Court's conclusion that the dispute leading to the strike involved herein is a minor dispute suitable for resolution by the Adjustment Board is right and sound. *International*, 473 F.2d at 1173.

Affirmed.