**UNITED TRANSPORTATION UNION,**
Appellant,

v.

**PENN CENTRAL TRANSPORTATION
COMPANY et al.**
No. 74–1122.

United States Court of Appeals,
Third Circuit.

Argued Sept. 11, 1974.

Decided Oct. 23, 1974.

Cornelius C. O'Brien, Jr., G. Sander Davis, Philadelphia, Pa., for appellant.

Herman M. Wells, Richard N. Clattenburg, Philadelphia, Pa., for appellees.

Before ALDISERT, ADAMS and ROSENN, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

This appeal by the United Transportation Union (Union), bargaining representative of certain trainmen (including conductors, brakemen, and locomotive firemen) employed by the Penn Central Transportation Company (Company), is from the order of the District Court for the Eastern District of Pennsylvania denying injunctive relief against the Company's abolition of certain work assignments of its employees. The effect of these changes, the district court found, would make overtime work the rule rather than the exception at certain of the Company's yards.[1] The Union contends that this action of the Company has generated a "major" dispute under the Railway Labor Act, 45 U.S.C. § 151 et seq. (1970), and that an injunction should issue to maintain the status quo pending the dispute's resolution. The Union further contends that, even if the dispute in question were classified as "minor," the district court erred in holding that since the dispute had not been submitted to the Adjustment Board, and since the Union was seeking such relief independently of any suit for equitable relief by the Company, it did not have the power to issue an injunction to maintain the status quo.

When the nature of a dispute is "major" under the Railway Labor Act, *supra*, neither party may change the status quo without complying with the procedures of section 6 of the Act.[2] An in-junction may be issued to protect that status quo. United Transp. Union v. Burlington-Northern, Inc., 458 F.2d 354, 357 (8th Cir. 1972). Thus, if the dispute in question is "major," the district court erred in not granting the injunction.

After carefully considering the record, briefs, and oral argument, we agree with the district court that this is not a "major" dispute under the Railway Labor Act. This court, in Baker v. United Transportation Union, 455 F.2d 149, 154 n. 11 (3d Cir. 1971), has characterized the distinction between "major" and "minor" disputes as follows:

Under the Act, a major dispute is one arising out of the formation or change of collective agreements covering rates of pay, rules, or working conditions. Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 722-727, 65 S.Ct. 1282 [89 L.Ed. 1886] (1945). A minor dispute involves the interpretation or application of a collective agreement and under § 3 of the Act is subject to binding interpretation by the Railway Adjustment Board. Elgin, J. & E. R. Co., *supra*, at 722-727, 65 S.Ct. 1282.

The Union vigorously contends that the abolition of certain job assignments by the Company, thereby causing "the remaining crews to work substantial overtime on a regular basis," is in contravention of three provisions of the collective bargaining agreements "which if allowed to continue would represent a clear attempt to change the collective bargaining agreements as far as work-

---

1. A detailed statement of the facts is set out in the opinion of the district court, reported at 372 F.Supp. 671 (E.D.Pa.1973).

2. Section 6 of the Act, 45 U.S.C. § 156 (1970) provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

ing conditions of its employees."[3] The Company, with equal spirit, asserts that what it has done is sanctioned by other provisions of these agreements.[4]

■ In Local 1477 United Transportation Union v. Baker, 482 F.2d 228, 230 (6th Cir. 1973), Judge Hastie, sitting by designation, in seeking to resolve a similar conflict concluded:

> Confronted by such opposing characterization of particular disputes, the courts of appeals have consistently ruled that if the disputed action of one of the parties can "arguably" be justified by the existing agreement or, in somewhat different statement, if

the contention that the labor contract sanctions the disputed action is not "obviously insubstantial", the controversy is within the exclusive province of the National Railroad Adjustment Board.

The Union contends that the *Baker* test is inconsistent with the guidelines of Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), in determining whether a dispute is "major" or "minor." We believe that it is not inconsistent and we agree with the majority of the courts of appeals, that the "obviously insubstantial" test is the appropriate one to use.[5]

---

3. The Union points to two sections of Article 3 of the national agreement which provide in pertinent part:

Section 1. (a) [The] carrier will establish, for all classes or crafts of yard service employes covered by this Article 3, subject to the exceptions contained therein, a work week of forty hours, consisting of five consecutive days of eight hours each, with two days off in each seven, except as hereinafter provided.

\* \* \* \* \*

Section 11. (d) Except as provided in paragraphs (b) and (c) of this Section, employes, regular or extra, will not be permitted to work more than five straight time eight-hour shifts in yard service . . . in a work week, unless the extra board has been exhausted and the exigencies of the service require the use of additional men . . . . .

It also points to Rule 5–L–1 of the local agreement which provides:

Yard trainmen shall be assigned for a fixed period of time which shall be for the same hours daily for all regular members of a crew. So far as practicable, assignments shall be restricted to eight hours' work.

4. The Company points to Section 8.(3) of the national agreement which provides:

Employes worked more than five straight time eight-hour shifts in yard service in a work week shall be paid one and one-half times the basic straight time rate for such excess work . . . .

The Company also refers to the following rules of the local agreement and the decision pertaining to Rule 5–L–1:

Y–C–1. Regular Yard Trainmen except when changing off where it is the practice to work alternately days and nights for certain periods, working through two shifts to change off, or where exercising

seniority rights, all time worked in excess of eight hours continuous service in a twenty-four hour period shall be paid for as overtime on a minute basis at one and one-half times the hourly rate.

Y–C–2. Extra Yard Trainmen except as indicated below or when changing off where it is the practice to work alternately days and nights for certain periods, working through two shifts to change off, or where exercising seniority rights, all time worked in excess of eight hours continuous service in a twenty-four hour period shall be paid for as overtime on a minute basis at one and one-half times the hourly rate.

The *Question* and *Decision* relating to Rule 5–L–1 is as follows:

Question: If a yard crew is assigned for ten hours and for some reason is released at the expiration of eight hours, what number of hours is to be allowed?

Decision: A minimum of eight hours. Assignments should be for eight hours and time worked in excess thereof should be paid as overtime.

5. To our knowledge, the Fourth and Tenth Circuits have not decided the question. The rest of the circuits have adopted a test either identical or similar to the one used here. Airlines Steward Ass'n v. Caribbean Atl. Airlines, Inc., 412 F.2d 289 (1st Cir. 1969) (not "obviously insubstantial") ; Rutland Ry. v. Brotherhood of Locomotive Eng'rs, 307 F.2d 21 (2d Cir. 1962), cert. denied, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963) (agreement, "reasonably interpreted, may recognize implicitly") ; REA Express, Inc. v. Brotherhood of Ry. Clerks, 459 F.2d 226 (5th Cir.), cert. denied, 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972) ("arguable") ; Local 1477 United Transp. Union v. Baker, 482 F.2d 228 (6th

■■ The district court found, and we agree, that the Company's contention that the collective bargaining agreement sanctions the disputed changes is not "obviously insubstantial" and the dispute is a "minor" one within the meaning of the Act. The status quo provision of section 6 does not apply to "minor" disputes and a party may effect a change pending resolution of the dispute by the Adjustment Board. Brotherhood of Locomotive Firemen v. Southern Pac. Co., 447 F.2d 1127, 1132 (5th Cir. 1971); Hilbert v. Pennsylvania R.R., 290 F.2d 881, 884 (7th Cir.), cert. denied, 368 U.S. 900, 82 S.Ct. 174, 7 L.Ed. 2d 96 (1961).

■■ The Union also contends that the district court has the power to issue an injunction to maintain the status quo and prevent irreparable injury pending the resolution of this dispute by the Adjustment Board. The Union, however, has not requested such temporary relief; it has not even declared its intention to submit the dispute to the Adjustment Board. Rather, the Union has requested an injunction to compel the maintenance of the status quo by the Company until it complies with the procedures of section 6. Even if the Union had requested temporary relief pending resolution of the dispute by the Adjustment Board, such relief would only be granted to preserve the jurisdiction of the Adjustment Board. Westchester Lodge 2186, Brotherhood of Ry. Clerks v. Railway Express Agency, Inc., 329 F.2d 748, 753 (2d Cir. 1964). When, as here, the Union has not followed the grievance procedures in the contract, has not submitted the dispute to the Adjustment Board nor indicated any desire to do so, and has not engaged nor threatened to engage in a work stoppage, the issuance of an injunction would tend to defeat, not preserve, the jurisdiction of the Board. Westchester Lodge 2186, supra.[6]

The order of the district court will be affirmed.

Cir. 1973) (not "obviously insubstantial"); United Transp. Union v. Baker, 499 F.2d 727 (7th Cir. 1974) (not "frivolous"); United Transp. Union v. Burlington Northern, Inc., 458 F.2d 354 (8th Cir. 1972) ("reasonably susceptible"); Southern Pac. Transp. Co. v. United Transp. Union, 491 F.2d 830 (9th Cir.), cert. denied, 416 U.S. 985, 94 S. Ct. 2389, 40 L.Ed.2d 762 (1974) ("reasonabl[y] susceptible"); IBEW v. Washington Terminal Co., 154 U.S.App.D.C. 119, 473 F. 2d 1156 (1972), cert. denied, 411 U.S. 906, 93 S.Ct. 1530, 36 L.Ed.2d 195 (1973) ("arguably").

6. The Union cites cases in support of its position, which, as the district court noted, involved injunctions issued against an actual or threatened strike, e. g., Itasca Lodge 2029, Brotherhood of Ry. Clerks v. Railway Express Agency, Inc., 391 F.2d 657 (8th Cir. 1968), or in which the dispute had been submitted to the Adjustment Board, e. g., Local Lodge 2144, Brotherhood of Ry. Clerks v. Railway Express Agency, Inc., 409 F.2d 312 (2d Cir. 1969). See Brotherhood of Local Firemen, supra, at 1132–1133 n. 4. However, as we have indicated, this is not the situation in the instant case.