INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO (IAM), et al., Plaintiff,

v.

COMPAGNIE NATIONALE AIR FRANCE, Defendant.

No. 77 Civ. 2913 (CHT).

United States District Court,
S. D. New York.

July 1, 1977.

Kevin P. Quill, Long Island City, N. Y., for plaintiff.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, of counsel, Herbert Prashker, Edward A. Brill, Jeffrey G. Steinberg, New York City, for defendant.

TENNEY, District Judge.

Plaintiff International Association of Machinists and Aerospace Workers ("IAM") has applied for a preliminary injunction enjoining defendant Compagnie Nationale Air France ("Air France") from unilaterally cancelling the previously effective collective bargaining agreement of January 3, 1977 and from ceasing to recognize plaintiff as the legal representative of the cargo agents at Air France. After a brief hearing before Judge Brieant of this court on June 15, 1977, a temporary restraining order was signed requiring the parties to operate under the January 3 agreement. On June 24, 1977, the parties appeared in court to argue the plaintiff's motion for a preliminary injunction and the Court continued the temporary restraining order until it could determine if jurisdiction was proper to entertain the action for injunctive relief. For the reasons stated below, plaintiff's motion is denied and the case is dismissed.

The relevant details are as follows. Plaintiff is a labor union which has been "the exclusive bargaining representative for the cargo agents and lead cargo agents employed by Air France since 1950." Complaint ¶ 5. Airline employees performing cargo agent duties have "since 1947, historically been included in an overall 'craft or class' of Clerical, Office, Fleet and Passenger Service employees." Carrara Affidavit, sworn to June 23, 1977, at 3. Defendant Air France contends that the cargo agents wish to separate from the IAM and seek to be represented as a separate group by the

International Brotherhood of Teamsters ("IBT"). The Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–88, provides a procedure by which airline employees select a labor organization as their collective bargaining representative, provided that such representative has been so designated by a majority of the employees in a "craft or class" of airline employees and recognized by the National Mediation Board ("NMB"). RLA § 2, Fourth and Ninth, 45 U.S.C. § 152, Fourth and Ninth.

On January 3, 1977, Air France and IAM agreed to a new collective bargaining contract, which included, *inter alia*, the following unique provision in Article XVII(q):

> "Notwithstanding the 'Effective Date and Duration' provisions of this Agreement, and any reference to the Railway Labor Act in the Agreement, if a decision of the National Mediation Board permits the certification of a representative of employees of any airline who perform functions analogous to those being performed by the employees covered by this Agreement in a group other than the class or craft of which the National Mediation Board has historically determined such employees to be a part, then this agreement will terminate."

On May 4, 1977, Air France notified IAM of an NMB decision of March 23, 1977 which recognized as a separate bargaining unit United Air Lines freight agents. *See* NMB Case No. R–4550, annexed as Exhibit A to Affidavit of Eugene Carrara, sworn to June 20, 1977. Air France construed this decision as permitting certification of a collective bargaining representative for United Air Lines employees who perform functions analogous to those performed by Air France's cargo agents. Air France therefore informed IAM that the January 3 agreement was terminated in accordance with the provisions of Article XVII(q).

Five weeks later IAM instituted this action. It contends that Air France's action in unilaterally ceasing performance under the agreement was unlawful and in violation of that agreement and sections 2 and 6 of the RLA. Complaint ¶¶ 8–12. It is un-disputed that neither Article XVII(q) nor any other term of the contract prescribes a method or procedure for determining whether an NMB decision triggers Article XVII(q). IAM further contends that even if Air France's action is deemed consistent with Article XVII(q), that article itself must be declared illegal and in violation of the RLA since it "was forced into the contract by Air France, [and] it is clearly an attempt to by-pass legislation passed by Congress and is in violation of public policy and thus is null and void." *Id.* ¶ 12. IAM argues that Air France's decision to no longer recognize IAM as the representative of the cargo agents "unilaterally changed the terms and working conditions of the cargo employees in violation of Section 6 of the Railway Labor Act," *id.* ¶ 10, and that "Air France is attempting to use the United Airlines determination as a subterfuge to eliminate the [IAM] as the representative of the cargo agents in violation of Section 2 of the Railway Labor Act." *Id.* ¶ 11. Air France argues in opposition that it did not act unilaterally to change the contract but that its termination of the contract was itself an act authorized by Article XVII(q) of the contract. Air France also asserts that the article was legitimately bargained for and is proper and lawful. IAM requests the Court to issue an order enjoining Air France from interfering with the representation of its employees by the IAM and declaring the January 3 contract in full force. *Id.* ¶¶ 15–16.

In essence, the plaintiff is asking the Court to construe Article XVII(q) to determine whether Air France's actions complied with the contract and with the Railway Labor Act. It is well-settled that Congress established the act to provide explicit procedures for the settlement of labor disputes. The specific procedure to be used in any given dispute depends on whether that dispute is considered "major" or "minor." 45 U.S.C. §§ 151 *et seq.* The Supreme Court has defined these terms as follows:

> "[Major disputes relate] to disputes over the formation of collective agreements or efforts to secure them. They

arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

"[Minor disputes contemplate] the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." *Elgin, Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945).

 The United States Court of Appeals for the Second Circuit has further explicated the distinction between major and minor disputes.

"Distinguishing between a minor dispute (interpretation and application of an existing agreement) and a major dispute (formation or alteration of an agreement) can sometimes be quite difficult, for there are areas in which the line seems rather indistinct. Agreements are ofttimes changed as much by interpretation as by the substitution of new agreements. As Judge Waterman observed for this court in *Rutland Railway Corp. v. Brotherhood of Locomotive Engineers* . . 'the difference, on the one hand, between the interpretation and the application of an existing agreement, and, on the other hand, a change in an original intended basis of agreement is often a question of degree.' 307 F.2d at 33." *Westchester Lodge 2186, Brotherhood of Railroad Clerks v. Railway Express Agency, Inc.*, 329 F.2d 748, 752 (2d Cir.1964).

If the quarrel between the parties is whether the terms of the collective bargaining agreement of January 3 have been complied with, then it would be characterized as a minor dispute. Such disputes fall within the exclusive jurisdiction of the National Railroad Adjustment Board, which has authorized local System Boards of Adjustment to consider these disputes under section 204 of the RLA, 45 U.S.C. § 184. *Elgin, Joliet & Eastern Railway Co. v. Burley, supra; United Transportation Union v. Penn Central Transportation Co.*, 505 F.2d 542, 543–44 (3d Cir. 1974); *Local 1477, United Transportation Union v. Baker*, 482 F.2d 228, 230 (6th Cir.1973); *International Association of Machinists and Aerospace Workers v. Northeast Airlines, Inc.*, 473 F.2d 549, 554 (1st Cir.), cert. denied, 409 U.S. 845, 93 S.Ct. 48, 34 L.Ed.2d 85 (1972); *Airlines Stewards & Stewardesses Association, Local 550 v. Caribbean Atlantic Airlines*, 412 F.2d 289, 291 (1st Cir.1969); *Ruby v. American Airlines, Inc.*, 323 F.2d 248 (2d Cir.1963), cert. denied, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964); *District 100, International Association of Machinists and Aerospace Workers v. Compagnie Nationale Air France*, 414 F.Supp. 538, 542 (E.D.N.Y. 1976); *Deboles v. Trans World Airlines*, 350 F.Supp. 1274, 1283–84 (E.D.Pa.1972). Therefore, this Court is without authority to interpret the terms of the collective bargaining agreement and determine whether Air France's actions are in lawful compliance with the agreement. Although the section primarily contemplates resolution of employee grievances, its literal mandate must be adhered to, and it is irrelevant that the dispute in this case is between a union and an employer rather than an employer and an employee. *International Association of Machinists and Aerospace Workers v. Northeast Airlines, Inc., supra*, 473 F.2d at 555; *Deboles v. Trans World Airlines, supra*, 350 F.Supp. at 1284.

 A federal court may, however, issue an injunction to preserve the status quo in order to protect the jurisdiction of the Adjustment Board when a dispute has been submitted for consideration pursuant to the procedures outlined in 45 U.S.C. § 184. *See Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co.*, 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); *United Transportation Union v. Penn Central Transportation Co., supra*, 505 F.2d at 545; *Westchester Lodge 2186,*

*Brotherhood of Railroad Clerks v. Railway Express Agency, Inc., supra,* 329 F.Supp. at 753.

Because neither party has exhausted appropriate remedies by following the grievance procedure outlined in Article XIV of the collective bargaining agreement and submitting the dispute to the System Board of Adjustment, this Court cannot issue an injunction to protect the exclusive jurisdiction of a forum whose authority has not been invoked. *United Transportation Union v. Penn Central Transportation Co., supra,* 505 F.2d at 545; *Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union,* 413 F.Supp. 681, 685 (E.D. Mich.1976).

Plaintiff also challenges the legality of Article XVII(q) of the contract in light of the RLA. This claim, however, does not depend upon an interpretation of the terms of the contract and is therefore not a minor dispute within the jurisdiction of the System Board of Adjustment. IAM claims that the article is a subterfuge intended to permit Air France to change the terms of the January 3 contract. Characterized thus, the dispute would fall within the category of major dispute. Plaintiff claims that Article XVII(q)

"is illegal and in violation of the Railway Labor Act. The procedure for determining who is the representative of employees under the Railway Labor Act are [sic] specified in the Act. The clause, which was forced into the contract by Air France, is clearly an attempt to by-pass [this procedure]." Complaint ¶ 12.

Jurisdiction to consider major disputes lies with the National Mediation Board under Section 2 of the RLA, 45 U.S.C. § 152. *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 378, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969); *Westchester Lodge 2186 v. Railway Express Agency, Inc., supra; Brotherhood of Railway & S. S. Clerks v. United Air Lines, Inc.,* 325 F.2d 576 (6th Cir.1963), *cert. dismissed,* 379 U.S. 26, 85 S.Ct. 183, 13 L.Ed.2d 173 (1964). Plaintiff claims that Article XVII(q) is illegal and therefore that Air

France's actions constitute an alteration of the existing contract. As well as considering issues relating to changes in existing contracts or formation of new ones, the NMB has been granted primary authority over issues of representation of employees in the bargaining process. 45 U.S.C. § 152, Ninth. *Brotherhood of Locomotive Firemen & Enginemen v. Seaboard Coast Line Railroad Co.,* 413 F.2d 19 (5th Cir.), *cert. denied,* 396 U.S. 963, 90 S.Ct. 432, 24 L.Ed.2d 426 (1969); *Howard v. St. Louis-San Francisco Railway Co.,* 244 F.Supp. 1008 (D.C.Mo.1965), *aff'd,* 361 F.2d 905 (8th Cir.), *cert. denied,* 385 U.S. 986, 87 S.Ct. 598, 17 L.Ed.2d 448 (1966); *Ruby v. American Airlines, Inc., supra; Dones v. Eastern Air Lines, Inc.,* 408 F.Supp. 1044, 1048 (D.P.R. 1975).

The United States Court of Appeals for the First Circuit has expounded upon this principle in a case calling for a determination of the representative of airline employees. The plaintiff union was the bargaining representative of certain Northeast Airline employees prior to the merger of Northeast and Delta Air Lines. The merger was accomplished under a Civil Aeronautics Board order which specifically affected certain working conditions. Plaintiff claimed that Northeast should have negotiated with it regarding the effects of such merger terms. The court explained:

"Where there is no real question about whether a union is the legitimate representative of an airline's employees, the . . . function of deciding the extent of the duty to bargain rests properly with federal courts. . . .

"However, the duty to bargain imposed by the Railway Labor Act is a duty to bargain with a chosen representative of the majority of the craft or class of employees. At the very least, the merger created real doubts about whether the plaintiffs represent the majority of any Delta [Airlines] craft or class of employees, and where there is such doubt, federal courts leave resolution of the dispute to the National Mediation Board." *International Association of Machinists and*

*Aerospace Workers v. Northeast Airlines, Inc.,* 536 F.2d 975, 977 (1st Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 328 (1976) (citations omitted). *See also Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union, supra,* 413 F.Supp. at 685.

The complaint in this case charges that defendant acted in violation of the contract and seeks a declaration of the contract's vitality. The defendant's justification of its actions as proper under the contract would seem to categorize the dispute as minor. *Local 1477, United Transportation Union v. Baker, supra,* 482 F.2d at 230; *Rutland Railway v. Brotherhood of Locomotive Engineers,* 307 F.2d 21 (2d Cir.1962), *cert. denied,* 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). It is obvious, however, that the gravamen of the complaint concerns IAM's continued *representation* of Air France's cargo agents—a major dispute within the primary jurisdiction of the NMB. In fact, Air France admitted in court that Article XVII(q) was inserted in the January 3 contract in order to circumvent prior rulings of the NMB which denied certification of cargo agents as a class of employees to be represented by the IBT. Transcript of June 24, 1977, at 14–15.

■ This Court concludes that the issue here is really one of representation, "a subject which Congress has given the Mediation Board the duty to determine." *Ruby v. American Airlines, Inc., supra,* 323 F.2d at 254. Therefore it will not exercise jurisdiction over the matter. *Burlington Northern Inc. v. American Railway Supervisors Association,* 503 F.2d 58 (7th Cir.1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975); *Brotherhood of Railway, Airline & Steamship Clerks v. Pan American World Airways, Inc.,* 404 F.2d 938 (2d Cir.1969); *Aircraft Mechanics Fraternal Association v. United Airlines, Inc.,* 406 F.Supp. 492 (N.D.Cal.1976). Nor will the Court exercise its discretion to issue an injunction to preserve the status quo while the procedures for settling the dispute are exhausted. This refusal to grant the equitable relief requested by the plaintiff is justified where it does not appear that the party has pursued those administrative remedies which the injunction is intended to protect.

Accordingly, the plaintiff's motion is denied and the action is dismissed.

So ordered.