CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, a corporation, Plaintiff,

v.

UNITED TRANSPORTATION UNION, a voluntary association, D. C. Deering, Individually and as International Vice President, G. R. Maloney, Individually and as General Chairman, R. H. Koepke, Individually and as General Chairman, T. Q. Ryan, Individually and as General Chairman, R. D. Darsie, Individually and as General Chairman, D. Markgraf, Individually and as Vice General Chairman, D. Hinrichsen, Individually and as Local Chairman, Defendants.

No. 80 C 2349.

United States District Court, N. D. Illinois, E. D.

May 23, 1980.

James P. Daley, Ronald J. Cuchna, Chicago, Ill., for plaintiff.

John J. Naughton, Chicago, Ill., for defendants.

1. The Rules are:

Rule 63(a)   Reasonable time for meals en route will be allowed conductors, provided train dispatcher is notified.

MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

This is an action seeking damages and declaratory and injunctive relief under the Railway Labor Act (the Act), 45 U.S.C. §§ 151–160. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1337.

Plaintiff is Chicago and North Western Transportation Co., a carrier within the meaning of the act. 45 U.S.C. § 151. Defendants are United Transportation Union (UTU), the collective bargaining representative of certain classes of employees, including firemen, hostlers, outside hostler helpers, conductors, trainmen and yard service employees, and various officials of the UTU. Defendants are sued in their individual and representative capacities.

The matter is before the Court on plaintiff's motion for a preliminary injunction prohibiting a threatened strike by the UTU. The action involves the interpretation of three rules which are part of the pertinent collective bargaining agreements and which provide that a reasonable time for meals en route will be allowed.[1] Specifically, the controversy arises out of the application of those rules to situations in which employees request en route stops enabling them to eat at restaurants.

Defendants argue that because plaintiff has refused to permit meals en route, it has violated the collective bargaining agreements and the numerous awards generated by the interpretation of the meals rules. Thus, according to defendants, all conciliatory efforts required by the Act have been exhausted and defendants are entitled to pursue self help remedies, that is, to strike. In addition, defendants charge that plaintiff has violated the Norris-LaGuardia Act, 29 U.S.C. § 108, in that it has not made every reasonable effort to settle the dispute through negotiation, and that, therefore,

Rule 63(a)   Reasonable time for meals en route will be allowed trainmen, provided conductor and train dispatcher are notified.
Rule 57   No fault will be found with firemen or helpers for taking a reasonable time for meals.

this Court is without jurisdiction to grant injunctive relief. 29 U.S.C. § 101.

Plaintiff's position is that this controversy involves a minor dispute, the resolution of which is beyond the scope of this Court's jurisdiction. Plaintiff also asserts that defendants are not entitled to resort to self help measures to resolve minor disputes and, therefore, because a strike would be unlawful, it should be enjoined.

■ Since the nature of the dispute triggers distinct procedural mechanisms which, in turn, determine substantive rights, *Elgin, Joliet & Eastern Ry. v. Burley*, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945), the threshold issue here is whether the controversy over the meal en route rules involves a major or minor dispute. Generally, a major dispute concerns the formation of a collective bargaining agreement or the change in terms of a collective bargaining agreement. In contrast, a minor dispute involves the interpretation of an agreement already in existence or the application of its provisions to a particular situation. *Elgin, Joliet & Eastern Ry. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945); *Chicago, Milwaukee, St. Paul & Pacific R. R. v. Brotherhood of Locomotive Firemen and Enginemen*, 397 F.2d 541, 543 (7th Cir. 1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).

Some background facts will illuminate the parties' arguments and the nature of the dispute. The meals en route rules have been a part of the collective agreements for over fifty years. During that time, disputes have arisen over the proper application of those rules as they pertain to employees taking meals at restaurants during over-the-road trips which, of course, necessitates stopping the train. Most recently, in April of 1979, following unsuccessful negotiations between the parties, a strike threat was communicated by the UTU. Plaintiff filed suit in this Court seeking a temporary restraining order, which was granted. As an agreed condition of that order, the dispute was submitted to Special Board of Adjustment No. 235 (SBA No. 235). The result was Award No. 2371 in which SBA No. 235 intended to set forth general guidelines for the application of the meals en route rules.

In the Award, the SBA No. 235 stated that once proper notice is given requesting a stop, "except in exceptional circumstances, the carrier will be in violation of the rules" unless a reasonable time for meals is allowed. The Board expressly declined to further define "exceptional circumstances." Instead, it relied on examples cited in a prior Award, Award No. 2314, which included "isolated instances caused by particular operating conditions . . . or a very short trip."

By claiming that plaintiff disregards all requests for meal stops, defendants posit that plaintiff is attempting to change the terms of the collective bargaining agreements, which constitutes a major dispute.

However, the evidence presented at the hearing demonstrates that the plaintiff has attempted to comply with the interpretation of the meals rule set forth in Award No. 2371. Shortly after the Award was issued, plaintiff sent a memorandum to its division managers explaining the Board's interpretation of the meals rules and the obligations of the carrier under the Award. In addition, personal meetings with transportation officers and dispatchers took place in which the award was discussed and an attempt was made to resolve operational difficulties resulting from the application of the award.

Plaintiff admits that some violations of the meals en route rules have occurred. In three situations, plaintiff determined that stop requests were improperly denied,[2] and took measures to rectify its procedures by prohibiting local officials to issue blanket instructions that the trains could not stop.

The other violations involved Falcon trains, which operate on an expedited schedule. Normally, the trip is completed in approximately four and a half hours, and

2. The trains involved were 141, 247 and 273.

the crew is on duty from five to six hours. Plaintiff's position is that the meals rules do not apply to Falcon trains since they fall into the "exceptional circumstances" exception outlined in Award No. 2371. They make "very short trips" and certain contractual obligations require compliance with more rigid schedules than exist in normal operations.

Whether plaintiff's position has merit or not need not be determined by this Court for it is clear from the recitation of these facts that plaintiff is not attempting to change the terms of the collective bargaining agreements. Indeed, it fully recognizes its obligations under the existing agreements. It merely seeks further illumination of the Award's provisions. Moreover, although defendant assert that some 70 violations of the meals en route rule have been reported to the UTU, there is no evidence that those claims have been verified or subjected to the initial grievance procedures. Thus, the only ripe claims are those three cases involving trains 141, 247 and 273, which have been submitted to SBA No. 235, and those involving Falcon trains, which, plaintiff argues, fall outside the mandates of the rules.

█ Unless the claims under the contract are frivolous or so insubstantial that they must be viewed as an attempt to mask their true nature, the controversy must be characterized as a minor dispute. *United Transportation Union v. Baker*, 499 F.2d 727, 730 (7th Cir. 1974), *cert. denied*, 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1974). *Accord, United Transportation Union v. Penn Central Transportation Co.*, 505 F.2d 542 (3d Cir. 1974). Based on the demonstration of past efforts to comply with the meals rule, the continued efforts to seek further explanation of the rule from SBA No. 235 and the deliberately broad definition of "exceptional circumstances," plaintiff's assertion that the collective bargaining agreements do not require stops on all routes is not frivolous. Therefore, this is a minor dispute requiring compliance with the arbitration procedures of the Act. *See Andrews v. Louisville & Nashville R. R.*, 406

U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Brotherhood of Railroad Trainmen v. Chicago River & Indiana*, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); *United Transportation Union v. Baker*, 499 F.2d 727 (7th Cir. 1974), *cert. denied*, 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1974).

█ Plaintiff has also demonstrated that it will sustain irreparable injury if the injunction does not issue, and that a major disruption of passenger and freight transportation within interstate commerce will result. Plaintiff will be deprived of a very substantial portion of its revenue which amounts to approximately $2,000,000 a day. A strike will cause diversion of traffic from this carrier which it may never regain. Moreover, the public will be deprived of important services such as the mail and commuter transportation in the Chicago area. Since plaintiff is an important link in the transcontinental rail service, a strike would cause congestion along alternate routes, causing delays in rail traffic. Also, a strike may generate increased unemployment in areas served by plaintiff. For instance, plaintiff is the sole shipper of parts to automobile plants in Kenosha and Janesville, Wisconsin and Belvidere, Illinois. Those plants may be forced to shut down should the parts not arrive.

█ Defendants argue that the injunction should be denied because plaintiff failed to comply with Section 8 of the Norris-LaGuardia Act, 29 U.S.C. § 108. The section prohibits injunctive relief "to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108. Essentially, a charge of non-compliance with Section 108 is equivalent to the equitable defense of unclean hands.

This case involves six incidents of violations to the meals rules. Three of the grievances have been submitted to the SBA No. 235. The other three grievances in-

volve Falcon trains which plaintiff asserts do not fall within the meals rules' provisions. With respect to those trains, the plaintiff has requested the independent member of SBA No. 235 to issue an interpretation of Awards Nos. 2314 and 2371 and the definition of "exceptional circumstances" and "short trip." Under these circumstances, failure to comply with Section 8 has not been established.

Further, in *Brotherhood of Railroad Trainmen v. Akron & Barkerton Belt R. R.*, 385 F.2d 581, 614 (D.C.Cir.1967), *cert. denied*, 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968), a case relied upon by defendants, the court noted that in certain circumstances a lack of unclean hands may be subrogated to consideration of the public interest. The substantial disruption of interstate commerce and the adverse effects on the economy in the areas served by plaintiff have already been noted. Compared with the small number of substantiated grievances involved here, the scales decisively tip on the side of the public interest.

Accordingly, plaintiff's motion for a preliminary injunction is granted.