**UNITED TRANSPORTATION UNION**

v.

**UNION RAILROAD COMPANY and
United States Steel Corporation.**

**Civ. A. No. 82–2442.**

United States District Court,
W.D. Pennsylvania.

Dec. 30, 1982.

---

T.P. Shearer, Pittsburgh, Pa., for plaintiff.

Robert N. Gentile, Monroeville, Pa., for defendant Union R.R. Co.

Wayne L. Emery, Pittsburgh, Pa., for defendant U.S. Steel Corp.

## OPINION

WEBER, District Judge.

Plaintiff United Transportation Union (UTU) seeks an injunction against U.S. Steel and the Union Railroad to maintain the job assignments of its members at U.S. Steel's National-Duquesne and Edgar Thompson works. Because we conclude that this court lacks jurisdiction over the dispute, we hereby dismiss the action.

UTU is a labor organization representing certain employees of the Union Railroad, and is party to collective bargaining agreements with the Railroad. Labor relations between these parties are regulated by the provisions of the National Railway Labor Act, which provides for arbitration of certain labor disputes. Union Railroad is an independently incorporated rail carrier, and is wholly owned by U.S. Steel Corporation. Union Railroad serves a number of substantial customers although U.S. Steel is its primary customer.

Union Railroad owns and operates its own railroad equipment and trackage, linking various U.S. Steel plants. U.S. Steel also owns and operates its own railroad equipment and trackage within its individual plants. U.S. Steel trackage interchanges with Union Railroad trackage at each of five plants, including the two at issue here.

Union Railroad crews have traditionally performed certain tasks on trackage within U.S. Steel plants. On three recent occasions, U.S. Steel has informed Union Railroad of its decision to perform certain of those tasks with its own railroad personnel instead of employing Union Railroad crews. Those three instances are as follows:

1. By letter of June 9, 1982, U.S. Steel advised Union Railroad that upon resumption of blast furnace operations at the Edgar Thompson works, scheduled for March 1983, U.S. Steel will use its own crews and equipment rather than the Railroad's crews and equipment to transport hot cinder from the furnace. The UTU was notified of this change by letter of June 11, 1982 from the Railroad. Whereas previously the Railroad had hauled cinders to slag pits five miles from the furnace, U.S. Steel will now haul cinders across its own tracks to a pit within the plant.

2. By letter of July 29, 1982, U.S. Steel notified Union Railroad of two changes to take place at its National-Duquesne works. This information was communicated to the UTU by the Railroad by letter of August 5, 1982. Previously the Railroad's crews placed empty ingot mold cars in the Electric Furnace building and pulled loaded ingot cars from the building. Under the new plan, U.S. Steel crews would perform the

switching of these cars to and from the Electric Furnace building. Union Railroad crews would now place empties on and remove loaded cars from tracks adjacent to the building. Secondly, U.S. Steel crews would now have the responsibility for switching the spreader car and the side dump car in and out of the Electric Furnace building. These changes have been put into effect.

3. By letters of November 17 and 22, 1982, U.S. Steel informed the Railroad that beginning December 27, 1982, U.S. Steel crews would transport hot iron from the furnace to processing points within the National-Duquesne works. Such movements are termed "hot metal movements." Union Railroad would retain responsibility for transporting such materials to and from other U.S. Steel plants. The UTU was notified by the Railroad's letter of November 26, 1982.

Plaintiff claims that the changes in operations described above are in violation of the existing collective bargaining agreements and amendments. UTU specifically identifies the following sections:

4. Duquesne Division crews shall perform all switching and weighing in connection with servicing the Duquesne Plant ... (7/11/58).

6. Edgar Thompson Division crews shall perform all switching and weighing in connection with servicing the Edgar Thompson Plant... (3/1/44).

UTU contends that these provisions allocate the defined work to Union Railroad and UTU members, and that the recent changes are in violation of this allocation of work responsibilities in the agreement. Defendants respond that these provisions only define the division of Seniority Districts within the UTU, and do not guarantee Union Railroad or UTU members all switching work at a specified plant. Members of the appropriate UTU Seniority District are to perform all switching work in a plant that the Union Railroad is called upon to perform, but the agreement does not create a right to perform *all* switching duties.

Defendants have raised a serious jurisdictional challenge. It is settled law that a "minor" dispute under the Railway Labor Act, 45 U.S.C. § 151, et seq., is within the exclusive jurisdiction of the Railway Adjustment Board. *Andrews v. Louisville and Nashville RR Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *United Transportation Union v. Penn Central Transportation Co.,* 505 F.2d 542 (3rd Cir.1974). Plaintiff however contends that this is a "major" dispute, empowering the court to maintain the status quo by the issuance of an injunction. 45 U.S.C. § 156.

The distinction between "major" and "minor" disputes has been defined in the Circuit as follows:

Under the Act, a major dispute is one arising out of the formation or change of collective agreements covering rates of pay, rules, or working conditions. (citation omitted). A minor dispute involves the interpretation or application of a collective agreement and under 3 of the Act is subject to binding interpretation by the Railway Adjustment Board. (citation omitted).

*Baker v. United Transportation Union,* 455 F.2d 149, 154, n. 11 (3rd Cir.1971); quoted in *United Transportation Union v. Penn Central Transportation Co.,* 505 F.2d 542, 543 (3rd Cir.1974). See also *Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945).

In determining what type of dispute is before us, we consider the holding of the Court of Appeals for this Circuit in *Penn Central,* 505 F.2d at 544. The court followed a number of other Circuits in holding that where the argument that a party's actions are justified by the existing agreement is not "obviously insubstantial", the matter is within the exclusive jurisdiction of the Adjustment Board. See 505 F.2d at 544, and n. 5.

Defendants here argue that the agreements cited by the UTU implicitly recognize the power of Union Railroad's customers to change operations. Defendants also rely on past decisions of the Railway Ad-

justment Board which concluded that these provisions do not prevent U.S. Steel from performing its own work on its own track. While the UTU ably argues a contrary position on the interpretation of the agreements, and seeks to distinguish the past Adjustment Board decisions as involving isolated incidents and not a basic change in policy, the position of U.S. Steel and the Union Railroad is, at the least, arguable. Because the dispute revolves around the interpretation of the language of the collective bargaining agreements between the UTU and the Railroad, it is a matter within the exclusive jurisdiction of the Railway Adjustment Board.

UTU advances the argument that U.S. Steel and Union Railroad are so closely identified in this matter as to require this court to ignore the formalities of independent corporate existence. This position, even if adopted by the court, would not alter the nature of the dispute. In its brief the UTU argues that because of the close identity of U.S. Steel and its subsidiary Railroad, "the seniority contract with the Union Railroad must be read as covering all transportation work of the Steel Company ..." (Pl's brief at p. 8). The corporate veil theory then returns us to the issue of the scope of the collective agreement, and while it may support UTU's reading of the contract, the argument is appropriately made to the Railway Adjustment Board. Although we have before us the plaintiff's complaint and its motion for a preliminary injunction, and the defendants' opposition, the question of jurisdiction has been raised by the defendants' responses. The parties have entered into an extensive stipulation of facts sufficient for our determination of the jurisdictional issue.

We therefor conclude that this court lacks jurisdiction over this matter, and the action will be dismissed.

---

* Judge Fred Daugherty recused himself and took no part in the decision of this matter. In addi-