## IOWA TRANSFER RY. CO. v. SWITCH-MEN'S UNION OF NORTH AMERICA.

### No. 9633.

Circuit Court of Appeals, Eighth Circuit.

Aug. 3, 1933.

R. L. Read, of Des Moines, Iowa (J. G. Gamble, of Des Moines, Iowa, on the brief), for appellant.

Leo J. Hassenauer, of Chicago, Ill. (Donald R. Richberg, of Chicago, Ill., and Casper Schenk, of Des Moines, Iowa, on the brief), for appellee.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from an order confirming an award of arbitrators under the Railway Labor Act. The sole matter presented here is, "Does the award conform and confine itself to the agreement of arbitration?"

Section 8 of the act (44 Stat. 577, 584, USCA title 45, § 158) provides that such arbitration agreements "shall state specifically the questions to be submitted to the said board for decision; and that, in its award or awards, the said board shall confine itself strictly to decisions as to the questions so specifically submitted to it.". Section 9 of the act (44 Stat. 577, 585, USCA title 45, § 159) provides that an award may be impeached in the District Court for several reasons, including "That the award does not conform, nor con-

fine itself, to the stipulations of the agreement to arbitrate." The same section provides for an appeal to this court from an order of the District Court on an award. On such appeal, "only such portion of the record shall be transmitted * * * as is necessary to the proper understanding and consideration of the questions of law presented by said petition and to be decided."

Prior to and at the time this agreement to arbitrate was executed, there was an agreement between these parties governing wages and regulations of employment of yardmen. Articles 5 and 13 thereof, respectively, provided as follows:

"Article 5.
"Starting Time
"(a) Regularly assigned yard crews shall each have a fixed starting time and the starting time of a crew will not be changed without at least forty-eight (48) hours' advance notice.

"(b) Where three eight-hour shifts are worked in continuous service, the time for the first shift to begin work will be between 6:30 A. M. and 8:00 A. M.; the second, 2:30 P. M. and 4:00 P. M.; and third, 10:30 P. M. and 12:00 midnight.

"(c) Where two shifts are worked in continuous service, the first shift may be started during any one of the periods, named in Section (b).

"(d) Where two shifts are worked not in continuous service, the time for the first shift to begin work will be between the hours of 6:30 A. M. and 10:00 A. M. and the second not later than 10:30 P. M.

"(e) Where an independent assignment is worked regularly, the starting time will be during one of the periods provided in Sections (b) or (d).

"(f) At points where only one yard crew is regularly employed, they can be started at any time, subject to Section (a). * * *

"Article 13.
"Consist of a Crew
"A yard crew shall consist of one foreman and two helpers, and yardmen will not be required to work without a full crew unless assigned to work train service, or unless due to emergencies which cannot be foreseen."

The agreement to arbitrate provided:
"4. The specific question to be submitted to the Board for decision is the question submitted by the party of the first part to the party of the second part, reading as follows:

"Shall Articles 5 and 13, of the Switchmen's Agreement dated February 15, 1923, be changed to read as follows:

"'Article 5. Starting Time.

"'(a) Regular assigned yard crews shall each have a fixed starting time and the starting time of a crew will not be changed without at least twelve (12) hours' advanced notice.

"'(b) Where two shifts are worked, whether the periods of service are conjunctive or not, they may, at the option of the carrier, be started at any time, subject to Section (a) of Article 5.

"'Article 13. Consist of a Crew.

"'A yard crew may, at the option of the carrier, consist of one foreman and one helper.'"

The conclusions stated by the arbitration board were as follows:

"1. The advance notice of time of starting a yard crew, as provided in Article 5, is reduced from 48 hours to 24 hours.

"2. No change is authorized in Article 13 providing that a yard crew shall consist of one foreman and two helpers."

The reasons advanced by appellant in support of its contention that the award neither conforms to nor is confined to the questions submitted in the agreement are stated by it as follows:

"(1) Under the specific provisions of the agreement to arbitrate, the board was to decide whether the advance notice to be given under Paragraph (a) of Article 5 should be at least 12 hours, instead of 48 hours. This question the board of arbitration does not determine, and the decision of the board that the advance notice shall be 24 hours is beyond the scope of the question submitted on this point in the agreement of arbitration.

"(2) The award of the majority of the Board does not decide or dispose of the specific question submitted in respect to the substitution of a new Paragraph (b) of Article 5.

"(3) Specifically submitted to the board of arbitration was the question of whether Paragraphs (c), (d), (e), and (f) of Article 5 of the agreement between the Transfer Company and the Union should be eliminated. The Board does not decide this question.

"(4) Specifically submitted to the board of arbitration was this question: Shall Article 13 of the agreement between the Transfer Company and the Union be changed to read as follows: 'A yard crew may, at the option

of the carrier, consist of one foreman and one helper.'

"Article 13 of the agreement between the transfer company and the union is as follows: 'A yard crew shall consist of one foreman and two helpers, *and yardmen will not be required to work without a full crew unless assigned to work-train service, or unless due to emergency which cannot be foreseen.*' (Italics ours.)

"The decision of the board on this point (if it is a decision) reads as follows: 'No change is authorized in Article 13 providing that a yard crew shall consist of a foreman and two helpers.'

"Thus it is demonstrated that the decision of the board does not touch upon part of the specific question submitted to it in respect to the proposed change of Article 13, because the award says nothing concerning the proposed elimination of the italicized portion of Article 13 as above quoted; and leaves this question undecided."

■ The first reason is, in essence, that the board was confined to changing the rule to 12 hours or leaving it as it was at 48 hours. This is too technical. The matter really submitted was a shortening of the advance notice time from the 48 hours required by the existing contract rule. To suppose that appellant would rather have the 48-hour rule remain than any less time unless it were exactly 12 hours is absurd. Twelve hours was the period it wished. Forty-eight hours was the period the men desired. The broad question submitted was whether the period should be shortened. Also such a narrow construction would rob these arbitrations of much of that practical value they were designed to have. The arbitrators were not required to answer "yes" or "no" to the question submitted, but to answer it within the confines of the substantial controversy presented thereby.

■ The second and third reasons may be treated together as they refer to the same subject-matter. Paragraphs (b) to (f), inclusive, of the existing rule, have to do with the time when crew shifts are to be started to work. Paragraph (b) of the change suggested in the question submitted covers all of the matter in the above-existing paragraphs, and is intended as a substitute therefor. It substitutes the judgment of appellant for the definite rules prescribed by these paragraphs. It is not dependent upon the solution as to suggested paragraph (a) which deals only with the period of notice. The award is silent as to this part of the question, and leaves it entirely undisposed of.

■ Reason 4 concerns article 13 of the existing agreement, and is that a portion of the question relating to that article was not disposed of in the award. We think appellant's construction of that portion of the award is not sound. That construction rests on the thought that the expression of that portion of the award is confined merely to the number of men in a crew. We think the expression was not so intended. The award in that respect means simply that "no change is authorized in Article 13"; the rest of the sentence being merely an expression of the character of the article and not a particularization that only a part of the article was ruled on. Our conclusion is that the board ruled on those parts of the question relating to changes in article 5 (a) and in article 13, and did not rule that part relating to article 5 (b).

■ The defect in the award is, not that any part of it is wrong, but that it is incomplete, since it fails to answer a material part of the question submitted. It does not "conform" to the question. In this situation, the question rises as to what disposition shall be made of the award by this court. We look to the act for guidance. We think the provisions in section 8 of the act that the board "shall confine itself strictly to decisions as to the questions so specifically submitted to it," that questions may be withdrawn, and that the filed award shall be conclusive, not only as to the fact determined, but "as to the merits of the controversy decided," must mean that the award is required to dispose of every substantial matter presented in the specific questions submitted to it and that it must do so to "conform" thereto within the meaning of section 9 (third) of the act. Section 9 of the act in paragraph "Fourth," which is entitled "Effect of partial invalidity of award," provides that the District Court shall set the entire award aside if it determines a part is invalid unless the parts are separable and the parties agree to an order sustaining the valid part and setting aside the invalid part. The same section in paragraph "Sixth," entitled "Finality of decision of circuit court of appeals," provides that such decision shall be "final" and judgment thereon shall be entered by the District Court. Paragraph "Seventh," entitled "Judgment where petitioner's contentions are sustained," provides that, "if the petitioner's contentions are finally sustained, judgment shall be entered setting aside the award in whole or, if the parties so agree, in part; but in such case the parties may agree upon a judgment to be entered disposing of the subject matter of the controversy,

which judgment when entered shall have the same force and effect as judgment entered upon an award."

 The above three paragraphs clearly express the congressional intent that the award must be set aside, both by the District Court and by this court, if any part of it is not sustained unless the parties agree to other disposition. And the same section, paragraph "Third," provides for impeachment of an award which does not "conform" to the question submitted. In so far as this award goes—that is, in so far as it met the question to be answered by the arbitrators—we sustain it, but we cannot escape the conclusion that the award leaves untouched a material part of that question, and therefore does not "conform" to the question submitted. We feel compelled to "sustain the contentions" of appellant in that respect. Appellant has, so far, evinced no consent to a judgment for a partial award. It is not foreclosed, but may do so when our views are known and before the District Court is to enter judgment. To afford an opportunity for this consent, and thereby the saving of the award, we remand the matter to the District Court, with instructions to enter a judgment sustaining the award if the parties shall file an agreement to that effect within thirty days of receipt of the mandate from this court, otherwise to enter a judgment setting aside the award, after such time has elapsed. If it were possible, under the act, we would order resubmission to these arbitrators to amend the award by determination of this omitted matter, but the act (section 7 (c), 45 USCA § 157 (c) clearly prevents that being done.