**NORFOLK AND WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION, T. W. Keating, Jr., Donald W. Dunlevy, A. P. Prozzley, Peter L. Patsouras, David L. Kabaker and Special Board of Adjustment No. 861, Defendants.**

Civ. A. No. 77–1108.

United States District Court,
W. D. Pennsylvania.

March 10, 1978.

H. Woodruff Turner, Pittsburgh, Pa., for plaintiff.

Thomas P. Shearer, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

In a very ancient Greece questions of extreme gravity, private, dynastic and public, from all the cities and states of the Hellenic world were submitted to the Oracle at Delphi. It was truly a national tribunal. However, the answers to the questions posed were spoken by a priestess in an unknown tongue, and were interpreted by a priest in a form of poetry. Sometimes the answer lost something in the translation, or was interpreted with such poetic license that its meaning was not immediately clear but only became clear by the unfolding of later developments. Naturally, the answers of the Oracle were not always satisfactory

to some party, but Greek history does not disclose the existence of a tribunal for judicial review.

We have advanced in these many millennia. A modern equivalent of the Oracle of Delphi is supplied by 45 U.S.C. § 153 and a party disappointed by an answer thereunder has brought the matter to this United States District Court.

Plaintiff Norfolk & Western Railway Co. (herein called Railroad) sued in this Court to vacate an award of Supplemental Board of Adjustment No. 861,[1] basing jurisdiction upon § 3 of the Railway Labor Act, 45 U.S.C. § 153, and upon 28 U.S.C. § 1337. Defendant Union has moved to dismiss the Complaint.

The following facts are undisputed. By its order of June 24, 1964, the Interstate Commerce Commission approved the merger of the Nickel Plate Railroad into the Railroad as well as the lease by Railroad of the line and certain facilities and properties of the Pittsburgh & West Virginia R.R. That order incorporated by reference the April 16, 1962 Merger Protective Agreement between the Railroad and the predecessor unions of the Defendant herein, which in turn incorporated the provisions of the Washington Job Protection Agreement of 1936.

On April 11, 1975, the Railroad posted a notice of intended coordination of certain facilities taken over in the 1964 merger, which coordination would affect both seniority rights and schedule agreements in the territory from Pittsburgh Junction, Ohio, to Connellsville, Pennsylvania. The parties to this suit met several times but failed to agree on how the proposed coordination should be implemented. The Railroad petitioned the National Mediation Board to establish a Supplemental Board of Adjustment to resolve the dispute. S.B.A. No. 861 was then designated by the appropriate procedures.[2]

The questions submitted to the Board were as follows:

"(A) Does the implementing agreement proposed by the Carrier . . . meet the criteria set forth in Section 1(b) of the January 10, 1962 merger protective Agreement, and in the Washington Job Protective Agreement of May, 1936, as amended by the parties for the purposes of the said January 10, 1962 agreement, in effecting the unification, merger, consolidation and coordination of the Carrier's facilities, operations and services previously performed by the former Pittsburgh and West Virginia Railway Company, and by the former WLF District of the former New York, Chicago and St. Louis Railroad Company, as more fully described in Carrier's Notice of Intended Coordination dated April 1, 1976?

(B) If the answer to (a) is 'No', what agreement would be appropriate in this particular case?"

In its opinion and award the Board clearly found that it had jurisdiction over the dispute involved and held that the implementing agreement proposed by the Railroad was inconsistent with the 1962 Merger Protective agreement.

The award provided in full as follows: "The answer to Item (a) of the Question at Issue is 'No.'

"existence and the source of its authority are thus distinct from the mandatory boards . . . which are established solely pursuant to the Railway Labor Act."
The Board is rather an "extension of the Commission's jurisdiction under the Interstate Commerce Act."
On this point, we are inclined to agree with the Railroad because the public law boards are not by law assigned arbitration duties which involve more than interpreting existing contracts.

1. The requirements and procedure for establishing such boards are set forth in 45 U.S.C. § 153, second.

2. The union argues at p. 7 of its brief that Supplemental Board of Adjustment No. 861 was a "public law board" formed under the provisions of 45 U.S.C. § 153 second, Paragraph 2. The carrier disagrees, maintaining in its supplementary brief that the S.B.A. was a private or voluntary special adjustment board and that I.C.C. approval of the protective agreements which required arbitration of consolidation disputes means that the basis for the board's

"The answer to Item (b) of the Question at Issue is that the agreement terms appropriate for this particular case are the provisions of the Railway Labor Act."

In its brief on the Motion to Dismiss, the Defendant Union argued that the complaint asks the court to review the award in a manner that is beyond its power under 45 U.S.C. § 153 first (p) which provides that an S.B.A. award

"may not be set aside except for failure of the . . . [Board] to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the . . . [Board] making the order."

■ For its part, the railroad argues that the Board's answer to the second question submitted by the parties [3] constitutes as a matter of law, a failure to "conform to the scope of its jurisdiction" because it is incomplete. The railroad contends that, under Section 5(11) of the Interstate Commerce Act, 49 U.S.C. § 5(11), the I.C.C. is given "full power" to relieve carriers of the obligations imposed on them by other statutes insofar as such relief may be necessary to effect a merger approved by the I.C.C. See *Schwabacher v. United States*, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 [1947]. Section 1(d) of the 1962 Merger Protection Agreement and Sections 4 and 5 of the Washington Protective Agreement (quoted in the margin) [4] authorize, indeed require, the Board to prescribe the terms by which a coordination approved by the 1964 I.C.C. order shall be implemented when the parties cannot agree on those terms. The fact that the I.C.C. incorporated these agreements in its order approving the merger means that the provisions of the Railway Labor Act for negotiation of all "major" disputes [5] have been suspended under § 5(11) and are therefore inapplicable. Therefore when S.B.A. 861 referred the parties to the provisions of the Railway Labor Act as a means of resolving their dispute, it failed to answer the question posed to it. Such a failure of incomplete award constitutes a failure to "conform" to its jurisdiction, *Iowa Transfer Railway Co. v. Switchmen's Union of North America*, 66 F.2d 909 [8th Cir. 1933].

■ Because we have pending a motion to dismiss which, in essence forces a test of the legal sufficiency of the Railroad's complaint, we now consider only whether it is possible that the Railroad's position is correct. The difficulty in resolving this ques-

---

3. Norfolk & Western points out that the questions considered by the S.B.A. were first formulated in the railroad's letter to the National Mediation Board asking for the appointment of a neutral member of the panel. Furthermore, the Union responded to this request by indicating to the board that it approved of the request and made no objection at any time to the form of the questions.

4. Section 4. Each carrier contemplating a coordination shall give at least ninety (90) days written notice of such intended coordination by posting a notice on bulletin boards convenient to the interested employees of each such carrier and by sending registered mail notice to the representatives of such interested employees. Such notice shall contain a full and adequate statement of the proposed changes to be effected by such coordination, including an estimate of the number of employees of each class affected by the intended changes. The date and place of a conference between representatives of all the parties interested in such intended changes for the purpose of reaching agreements with respect to the application thereto of the terms and conditions of this agreement, shall be agreed upon within ten (10) days after the receipt of said notice, and conference shall commence within thirty (30) days from the date of such notice.

Section 5. Each plan of coordination which results in the displacement of employees or rearrangement of forces from the employees of all the carriers involved on bases accepted as appropriate for application in the particular case; and any assignment of employees made necessary by a coordination shall be made on the basis of an agreement between the carriers and the organizations of the employees affected, parties hereto. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13.

5. A major dispute involves the formation of a contract rather than the interpretation of a contract already in effect. See, e. g., *United Transportation Union v. Penn Central Railroad Co.*, 505 F.2d 542 [3d Cir. 1974].

tion is perhaps that the Board's award, like the pronouncements of the Delphic Oracle, was not meant to be easily or entirely understandable. In an attempt to analyze the theory on which the Board based its award, we called for further argument by the parties and sought their views on several points. First, we understood the Railroad to be maintaining that the award could only be explainable by concluding the S.B.A. had believed, unlike the court in *Brotherhood of Locomotive Engineers v. Chicago and Northwestern Ry. Co.,* 314 F.2d 424 [8th Cir. 1963] and the Supplemental Boards of Adjustment whose awards are collected in the Railroad's Appendix, that the I.C.C. either did not have, or had not exercised in this case, the power to suspend the Railway Labor Act's negotiating provisions. Because the Union's brief discussed only the question of what standard of review this court should apply in ruling on the motion to dismiss, it appeared that the Union must have intended to argue either that the Board correctly ruled as the Railroad suggested it had or that an incorrect legal conclusion by the Board was unreviewable. After the argument and our review of the Railroad's Supplemental Brief, we understand the parties' respective positions to be as follows:

The Railroad argues that S.B.A. 861 was bound by the assumption inherent in the second question of the submission, to the form of which the union had never objected—that it had the power to dictate the terms of the implementation if it rejected the carrier's proposal. The parties themselves reached that assumption by following the line of reasoning set forth above as the Railroad's position and the Board had no jurisdiction to decide to the contrary.

The Union counters that the Board, having no power to prescribe terms which would conflict with the substantive provisions of the Merger Protective Agreement, must have concluded that any possible implementation terms would so conflict.

We believe that if in fact the Board adopted the position suggested by the Union, its answer to the second question is unassailable by any reviewing court. It is also our tentative conclusion, that if the Board's reasoning was not to this effect, its award should be vacated and a remand ordered. However, because we cannot be even reasonably sure at this point that this interpretation of the award is correct, we will deny the motion to dismiss and await the filing of a motion consistent with this opinion.